IN RE ROMA.

(No. 4287—Decided March 8, 1948.)

*Messrs. Nicholas & Lambert,* for appellant petitioner.

*Mr. Joel S. Rhinefort,* prosecuting attorney, and *Mrs. Geraldine F. Macelwane,* contra.

CONN, J. An application seeking a writ of habeas córpus was filed in the Court of Common Pleas by petitioner Sam Roma. The petitioner had been taken

into custody by the sheriff of Lucas county, Ohio, at the request of the police department of Berwyn, Illinois, a suburb of Chicago, awaiting the Governor's warrant of extradition which was received two days later and served on petitioner. At the hearing, the warrant of the Governor of Ohio was introduced in evidence, from which it appears that this warrant was issued upon the requisition of the Governor of Illinois for the extradition of the petitioner, an alleged fugitive from justice of that state, charged "with the crime of child and wife abandonment (nonsupport)." The warrant recites also that a "copy of affidavit, complaint & warrant, duly authenticated" are attached to the requisition.

It is alleged in the warrant of the police magistrate of the city of Berwyn, Cook county, Illinois, which was also introduced in evidence, that on July 29, 1947, Sam Roma committed the offense of "neglect and refusal to provide for wife and child in violation of Sec. 24, Div. 1, of Chap. 68 of the Revised Statutes of Illinois." The warrant recites also "that said defendant, Sam Roma, did without any reasonable cause, desert, neglect and refuse to provide for the support of his lawful wedded wife, Lois Roma, said wife being in destitute and necessitous circumstances, and that said defendant, without lawful excuse, does neglect and refuse to provide for the support of his child, Lawrence Roma, age 6 weeks, in destitute and necessitous circumstances."

It appeared further from the evidence received at the hearing that when the petitioner was discharged from the service he went to the home of his parents, who then resided in Tomah, Wisconsin, where he remained a week or two and then went to Berwyn, Illinois, and there obtained board and room in the home

of Lois K. Carter, where he lived a number of months. While petitioner was in Berwyn, his mother wrote a letter to him and also to Lois K. Carter, inviting them to Tomah to visit petitioner's parents and "for a vacation." In one week after they had arrived in Tomah, to wit, on August 5, 1946, the petitioner and Lois K. Carter were married. Petitioner and his wife lived in the home of his parents until September 13, 1946, when the wife returned to her home in Berwyn. After five days, she returned to Tomah, where she remained two or three days, living with her husband in a hotel, and thereupon again returned alone to her home in Berwyn. Subsequently petitioner's wife corresponded with him in an effort to induce him to return to her, but he refused to answer her letters.

The petitioner never lived with his wife in Illinois and was never in Illinois after his marriage except on the occasion of his trip from Wisconsin to Toledo, when he stopped at Berwyn to obtain the assistance of the police in an effort to recover from his wife his radio and ring, but when told he would have to go through court procedure, he immediately left and came to Ohio. He did not visit his wife on that occasion.

At the conclusion of the hearing, the writ was denied, and from the judgment of the trial court this appeal is taken on questions of law.

The errors relied on are that "the Illinois court has no jurisdiction or authority over Sam Roma": that petitioner was not a resident of Illinois and never resided in Illinois after his marriage; that no crime was committed in Illinois; and that petitioner was not a fugitive from justice.

Under the provisions of Section 2, Article IV of the Constitution of the United States and the implementing federal statute (Section 662, Title 18, U. S. Code),

the person sought to be extradited from the asylum state must be a fugitive from justice and, if not, there is no authority under the Constitution and statutes of the United States for extradition. *Hyatt* v. *New York,* 188 U. S., 691, 47 L. Ed., 657, 23 S. Ct., 456; *Innes v. Tobin,* 240 U. S., 127, 60 L. Ed., 562, 36 S. Ct., 290.

However, under the provisions of the Uniform Criminal Extradition Act, the transfer of persons accused of crime may be accomplished even though the accused is not a fugitive from justice within the meaning of the federal Constitution. *English* v. *Matowitz,* 148 Ohio St., 39, 72 N. E. (2d), 898; 9 Uniform Laws Annotated, 170, 171.

The cases cited by petitioner and relied on by him antedate the enactment in this state of the Uniform Criminal Extradition Act (Sections 109-1 to 109-32, General Code, inclusive, August 20, 1937). The statutes then in force (Sections 109 to 115, inclusive, General Code), relative to the extradition of fugitives from justice, were expressly repealed by that enactment (117 Ohio Laws, 588). The repealed sections of the Code provided, among other things, that the party accused must be a fugitive from justice charged with a crime in the demanding state from whence he fled, and that the demand must be made in good faith. 18 Ohio Jurisprudence, 941, Sections 14 and 15; *Wilcox* v. *Nolze,* 34 Ohio St., 520; *In re Williams,* 5 Ohio App., 55, 25 C. C. (N. S.), 249, 27 C. D., 385; *Ex parte Maloney,* 29 C. D., 357, 27 C. C. (N. S.), 529; 8 O. L. J., 266; *State of Illinois, ex rel. McNichols,* v. *Pease,* 207 U. S., 100, 52 L. Ed., 121, 28 S. Ct., 58.

The uniform act has been adopted in at least thirty-one states, including Ohio and Illinois, and it has effected material procedural changes in extradition cases in those states. However, in some instances, the act

before adoption had been amended and its provisions in some respects were materially modified. This may account for the lack of uniformity in the decided cases.

Section 3 of the act (Section 109-3, General Code), which is analogous to former Section 110, General Code, provides:

"No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing alleging, except in cases arising under section 6 (Section 109-6, General Code), that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon * * *."

Section 6 of the act (Section 109-6, General Code) provides:

"The Governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section 3 (Section 109-3, General Code) with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this act not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom."

Under the provisions of Section 109-6, General Code, it appears that the Governor of this state is given permissive authority to surrender any person, on demand of the executive authority of another state, who has

committed an act in Ohio, or in a third state, and which act intentionally results in a crime in the demanding state.

It was held in *Culbertson* v. *Sweeney, Sheriff*, 70 Ohio App., 344, 44 N. E. (2d), 807, that the provisions of section 3 of the act (Section 109-3, General Code) come "clearly within the reserved sovereign powers of the State." See, also, 8 O. L. J., 266-274; 151 A. L. R., 239.

The evidence disclosed that the petitioner married Lois K. Carter on August 5, 1946, and that the warrant issued by the police magistrate of the city of Berwyn, Illinois, charged the petitioner with the offense of neglect to provide support for his wife, Lois Roma, and "that said defendant, without lawful excuse, does neglect and refuse to provide for the support of his child, Lawrence Roma, age 6 weeks, in destitute and necessitous circumstances" in violation of the statute (Sec. 24, Div. 1, of Chap. 68, R. S. of Illinois).

It appears from the evidence also that the requisition made by the Governor of Illinois upon the Governor of Ohio was in writing; that such requisition was accompanied by a copy of the affidavit made before the magistrate, together with a copy of the warrant which was issued thereon; that the requisition of the Governor of Illinois and the warrant of the Governor of Ohio each conforms with the provisions of section 3 of the act (Section 109-3, General Code) and the provisions of section 6 (Section 109-6, General Code) wherein the Governor of Ohio is authorized to surrender a person to a demanding state "even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom."

Under section 20 of the act (Section 109-20, General Code), the guilt or innocence of the accused may not

be inquired into by the Governor "except as it may be involved in identifying the person held as the person charged with the crime." *State* v. *Gregg,* 68 Ohio App., 397, 398, 40 N. E. (2d), 167; *Taylor* v. *Smith* (1938), 213 Ind., 640, 13 N. E. (2d), 954.

Furthermore, upon the issuance of the Governor's warrant, a presumption of its legality arises, and it is prima facie evidence that the proceedings had prior to its issuance were in all respects regular and in conformity with the laws of this state. 18 Ohio Jurisprudence, 953, Section 27; *Maloney* v. *Sheriff of Hamilton County,* 98 Ohio St., 463, 121 N. E., 646.

In the instant case, the prima facie showing of legality of the Governor's warrant has not been overcome by the evidence offered in behalf of petitioner, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

CARPENTER and FESS, JJ., concur.

CARPENTER, J., concurring. I cannot agree that the crime charged against Sam Roma is of the type of those mentioned in Section 109-6, General Code.

Apparently one phase of his defense, if and when he comes to make one, will be that he and his wife were not legally domiciled in the state of Illinois. As shown by the warrant, a copy of which is in evidence, it appears that the venue is laid "in said county (Cook) and state (Illinois)." On the trial, this will be a fact issue to be proven. Under Section 109-20, General Code, "the guilt or innocence of the accused" is not to "be inquired into by the Governor or in any proceeding after the demand for extradition" except as to the identity of the accused. There is no dispute in

this respect. The construction of the Uniform Criminal Extradition Act given it in *Taylor* v. *Smith,* 213 Ind., 640, 13 N. E. (2d), 954, expresses my understanding of the scope of that act.