OPINION
Debra Swinnie appeals from a judgment of the Montgomery County Court of Common Pleas which denied her petition for a writ of habeas corpus.
On August 5, 1999, Swinnie was arrested in Montgomery County, Ohio on a warrant from West Virginia. The West Virginia warrant had been issued after R. Keith Flenchium, an attorney in West Virginia, had filed a criminal complaint against Swinnie for obtaining labor by false pretenses. The complaint alleged that Flenchium had successfully represented Swinnie in a social security case, and that Swinnie had refused to pay Flenchium for his services.
After being arrested, Swinnie was brought before a Montgomery County common pleas judge, where she refused to waive her rights to contest extradition. The matter was continued to await a governor's warrant. The Governor of Ohio issued a warrant for Swinnie's arrest on September 30, 1999. On November 4, 1999, Swinnie filed a petition for a writ of habeas corpus, arguing,inter alia, that her liberty had been illegally restrained because she was not a fugitive, that the extradition documents were not in order, and that the purpose of the extradition was to enforce a civil liability.
The trial court conducted a hearing on the petition on November 12, 1999. Swinnie presented the testimony of two witnesses, Mona Bennett and William Swinnie ("Mr. Swinnie"). Bennett testified that she had known Swinnie for two years and that Swinnie had moved to Ohio in April 1998. She stated that Swinnie had visited her and had stayed overnight at her house for two nights around Thanksgiving 1998. Mr. Swinnie, Swinnie's brother, testified that Swinnie had moved to Ohio to live with him in April 1998, and that she had gone to visit relatives and friends in West Virginia a couple of times since she had moved to Ohio.
On November 16, 1999, the trial court denied Swinnie's petition for a writ of habeas corpus.
Swinnie advances one assignment of error on appeal.
 THE TRIAL COURT ERRED IN DENYING MS. SWINNIE'S PETITION FOR A WRIT OF HABEAS CORPUS.
Swinnie argues that the trial court erred in denying her petition for a writ of habeas corpus for the following reasons: she is not a fugitive; the extradition documents on their face are not in order; the extradition process is being used to enforce a civil liability; and it would "be bad public policy for Ohio to encourage attorneys to file criminal complaints against clients in order to utilize the extradition process to recover legal fees."
Clause 2, Section 2, Article IV of the Constitution of the United States, states:
 A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime.
This clause "was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed [and] * * * to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus `balkanize' the administration of criminal justice among the several states." Michigan v. Doran (1978), 439 U.S. 282, 287,99 S.Ct. 530, 534.
"A court considering release on habeas corpus of a petitioner arrested on a warrant of extradition may inquire only into the following areas: (1) whether the extradition documents on their face are in order, (2) whether the petitioner has been charged with a crime in the demanding state, (3) whether the petitioner is the person named in the request for extradition, (4) whether the petitioner is a fugitive, (5) whether the extradition is to enforce a civil liability, and (6) whether the petitioner, if he or she asserts some invalidity of arrest under the governor's warrant, rebuts its presumed validity by proof beyond a reasonable doubt." In re Terry (1988), 51 Ohio App.3d 133, 554 N.E.2d 1365, paragraph one of the syllabus. Further, a hearing before the trial court on a writ of habeas corpus "is very limited in scope and may not focus on the merits of the case." Id., paragraph two of the syllabus; see R.C. 2963.18.
Swinnie argues that she is not a fugitive because she was not in West Virginia on November 20, 1998, the date that the crime was allegedly committed. She claims that because the testimony established that she had moved to Ohio in April 1998 and that she had visited Bennett after Thanksgiving 1998, the trial court erred when it concluded that she could have been in West Virginia on November 20, 1998.
The Supreme Court of Ohio has stated as follows:
 When the invalidity of arrest under the Governor's warrant is asserted by a petitioner in habeas corpus upon the ground that the petitioner was not a fugitive from justice, in that he was not in the demanding state on or about the date of the offense charged, the burden is upon the petitioner to rebut the presumption that petitioner is prima facie in lawful custody by proof beyond a reasonable doubt. If the evidence in the record upon the issue of fugitivity is conflicting and there is present substantial evidence which, if true, tends to prove petitioner was in the demanding state on or about the date of the crime charged, the petitioner has not met the burden placed upon him and is not entitled to be discharged from custody.
In re Rowe (1981), 67 Ohio St.2d 115, 423 N.E.2d 167, paragraph three of the syllabus. See, also, State v. Barone (1984), 21 Ohio App.3d 97,98-99, 487 N.E.2d 1157, 1159-1160.
At the hearing, the testimony established that Swinnie had moved to Ohio in April 1998. Bennett testified that Swinnie had visited her after Thanksgiving 1998. Mr. Swinnie testified that Swinnie had visited West Virginia "a couple of times" since moving to Ohio. He also stated that Swinnie had a daughter and some uncles and aunts who still lived in West Virginia. Based upon this evidence, we cannot conclude that Swinnie met her burden of proving beyond a reasonable doubt that she could not have been in West Virginia on or about November 20, 1998, the date the crime allegedly occurred. All that Swinnie's evidence established was that, in November 1998, her permanent residence was Ohio and that she had visited Bennett after Thanksgiving. There is nothing in the record to establish where Swinnie was on or about November 20, 1998. Thus, we cannot conclude that the trial court erred in finding that she failed to meet her burden.
Swinnie argues that the extradition documents on their face are not in order. In support of this argument, she points to the following "problems": the West Virginia magistrate failed to check a box on the criminal complaint to indicate that he had found probable cause to support the complaint; the warrant indicated that the crime had been committed in December rather than November; the complaint was not file stamped; and the documents sent to the Governor of Ohio were not properly sworn and notarized.
"`[U]pon the issuance of the Governor's warrant, a presumption of its legality arises and it is prima facie evidence that the proceedings had prior to its issuance were in all respects regular and in conformity with the laws of this state.'"Carpenter v. Jamerson (1982), 69 Ohio St.2d 308, 315,432 N.E.2d 177, 181, quoting In re Roma (1948), 82 Ohio App. 414, 420,81 N.E.2d 612, 615.
The extradition documents before the trial court were as follows: an original requisition and an original warrant from the Governor of West Virginia, each signed by the governor and witnessed by the secretary of state, and each having a state seal attached; an original signed application from the prosecuting attorney of McDowell County, West Virginia requesting that the Governor of West Virginia issue a requisition to the Governor of Ohio for the extradition of Swinnie; an original sworn affidavit from the prosecuting attorney of McDowell County stating that Swinnie had been charged with the crime of obtaining labor under false pretenses; certified copies of the criminal complaint and warrant for Swinnie's arrest; and an original warrant from the Governor of Ohio, signed and witnessed, with a state seal attached.
After reviewing these documents, we cannot conclude that the alleged defects overcome the presumption of regularity and legality that arose with the governor's warrant. Although the West Virginia magistrate did not check a box on the complaint to indicate that he had found probable cause to support the complaint, the warrant which the magistrate signed states, "this court has found probable cause to believe that * * * [Swinnie] did commit an offense * * *." We believe that the listing of the wrong month on the warrant was merely a typographical error. See In reTerry, 51 Ohio App.3d at 135, 554 N.E.2d at 1368. The complaint's lack of a file stamp does not indicate to us that the documents are not in order. There is no evidence in the record regarding the procedure that West Virginia courts use to indicate the dates on which documents are filed. Further, none of the documents from West Virginia have a file stamp marking on them. Finally, it appears to us that the documents sent to the Governor of Ohio were properly sworn and notarized. Thus, Swinnie's argument is not persuasive.
Swinnie argues that Ohio has forbidden the use of extradition to enforce a civil liability and that the nature of the lawyer's claim against her is actually a civil debt claim rather than a criminal charge.
As stated supra, the trial court may examine whether the purpose of the extradition is to enforce a civil liability. We acknowledge that Flenchium may have a civil claim against Swinnie to collect the fees that she owes him. A person's actions, however, can subject her to both civil and criminal liability at the same time. The West Virginia Code, Chapter 61, Article 3, Section 24(d) provides, in part:
 If a person * * * obtains labor, services or any other such thing of value from another by any false pretense, token or representation, with intent to defraud, the person * * * is guilty of theft of services.
Thus, Swinnie could be criminally liable under West Virginia law for her actions. The documents in evidence reveal that the Governor of West Virginia requested Swinnie's extradition so that she could stand trial for the crime that she allegedly committed. Looking at the face of these documents, we can only conclude that Swinnie's extradition is not being requested to enforce a civil liability.
Swinnie argues that it would "be bad public policy" to extradite her to West Virginia to face criminal charges in this case because "this prosecution will result in attorney/client privileged matters being revealed, or attempted to be revealed" since the complaint was filed by an attorney who was trying to collect payment for his services in her case. She urges us to "hold that when an attorney files a criminal charge against a client in order to recover legal fees, under circumstances such as the instant case, Ohio will not extradite the person charged."
As one court has aptly stated, in extradition cases, "[the] court is concerned with the documentation only." In re Terry,51 Ohio App.3d at 135, 554 N.E.2d at 1368. Thus, we will not consider the public policy that could result from Swinnie's extradition. Protection of the attorney-client privilege and public policy are issues for the West Virginia court to address when it hears the case against Swinnie.
The assignment of error is overruled.
The judgment of the trial court will be affirmed.
FAIN, J. and YOUNG, J., concur.