## HUGHES v. PFLANZ, Jailer.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1905.)

1. EXTRADITION—CONSTRUCTION OF FEDERAL CONSTITUTION AND STATUTE—PERSONS CHARGED WITH CRIME.

In article 4, § 2, of the Constitution of the United States, providing for the extradition from one state to another of persons charged with crime, and Rev. St. § 5278 [U. S. Comp. St. 1901, p. 3597], enacted for the carrying out of such constitutional provision, the term "charged with crime" is used in its broad sense, and includes all persons accused of crime by

legal proceedings; the charge continuing until such person has been tried and acquitted, or, if convicted, until the sentence imposed has been performed.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Extradition, § 31.]

**2. SAME—EVIDENCE TO SUSTAIN PROCEEDINGS.**

Where a charge of crime made against a person in affidavits filed before a magistrate or a court has culminated in a conviction, the record of such conviction is sufficient evidence in proceedings for his extradition from another state, and the question as to the sufficiency of the affidavits becomes immaterial.

**3. FEDERAL COURTS—FOLLOWING STATE DECISIONS—CONSTITUTIONALITY OF STATUTE.**

The decision of the highest court of a state upon the constitutionality of a statute under the state Constitution is binding on the federal courts.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 956, 957.

Following state decisions, see note to Wilson v. Perrin, 11 C. C. A. 71, and Hill v. Hite, 29 C. C. A. 553.]

**4. EXTRADITION—FUGITIVE FROM JUSTICE—ESCAPED CONVICT.**

A person who, after having been convicted of a crime committed within a state, when sought for, to be subjected to the sentence of the court, is found within another state, is a fugitive from justice, within the meaning of the extradition statute.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Extradition, § 32.

Fugitives from justice under extradition laws, see note to In re Strauss, 63 C. C. A. 104.]

Appeal from the Circuit Court of the United States for the Western District of Kentucky.

The relator, Nelson B. Hughes, stole a gold watch in Putnam county, Ind., August 4, 1898. On the same day, affidavit was made before a justice of the peace of Putnam county, charging relator with the offense of larceny. The justice thereupon issued a warrant for Hughes' arrest, which was duly executed, and the warrant, with its return, filed in the office of the Putnam circuit court. On September 5, 1898, the prosecuting attorney for Putnam county filed another affidavit and a criminal information in the Putnam circuit court. This second affidavit was filed with the criminal information, and made two charges: First, of stealing the watch, and having been previously tried and convicted of petit larceny; and, second, of robbing the owner of the watch by violence. This affidavit was not sworn to before a justice of the peace, but before the clerk of the circuit court of Putnam county.

The information of the prosecuting attorney followed the language of the affidavit, making the charges in two counts. A nolle prosequi was entered as to the second count, charging robbery with violence. On September 6, 1898, a trial was had in the Putnam circuit court, and a jury found relator guilty as charged in the first count of the criminal information, and also found that he was 25 years of age. Judgment was accordingly entered, confining Hughes in the Indiana Reformatory, or at such place as might be designated by the board of managers, for a term of not less than 1 year, nor more than 14 years. Hughes was committed to the institution September 25, 1898. Under the Indiana law, on January 9, 1903, relator entered into what is called a "parole agreement," and was paroled by the board of managers of the Indiana Reformatory "to go outside of the buildings and inclosure of said reformatory, upon the conditions stipulated." The parole agreement required him to "remain in the legal custody and under the control of said board of managers." Appellant violated the conditions of the parole agreement, and on June 3, 1903, was declared delinquent by the board of managers, and his arrest and return to the reformatory ordered. He departed from Indiana in December, 1902, and went to Kentucky, where he remained until arrested in these proceedings. A request for a requisition was on February 28, 1905, made by the reformatory

superintendent to the Governor of Indiana. On February 28, 1905,. a requisi-
'tion for the rendition of Hughes as a fugitive from justice was issued by the
Governor of Indiana, addressed to the Governor of Kentucky. The papers
with this requisition did not include the original affidavit made before the
justice of the peace, nor the original warrant issued by the justice, upon
which relator was first arrested, but began with the affidavit made before the
clerk of the Putnam circuit court, and the criminal information of the prose-
cuting attorney of Putnam county. On March 1, 1905, the Governor of Ken-
tucky honored the requisition by issuing his warrant of arrest for Hughes,
and he was arrested in Boyd county, and brought to Louisville by the sheriff
of that county, and lodged in the Jefferson county jail on March 11, 1905.

Proceedings in the Jefferson circuit court for the identification of Hughes
and his delivery to the Indiana agent were postponed, to allow him to apply
for a writ of habeas corpus, until March 18th, on which date he filed his peti-
tion in the United States Circuit Court for the Western District of Kentucky,
at Louisville. The petition for the writ recites the trial, conviction, and parole
of Hughes; that he departed from Indiana and came to Kentucky; the requi-
sition of the Governor of Indiana; and the arrest of relator under the war-
rant of the Governor of Kentucky. It asks the writ of habeas corpus on the
ground 'that breaking his parole is not a crime under the law of Indiana;
that he was not charged with a crime of any kind, for which he could be ar-
rested and further punished, but only with a conviction of crime. Copies
of the original papers forwarded with the original requisition are filed with
the petition. The hearing of the motion for the writ was postponed until the
20th of March, when it was further postponed until the 27th, on which date
the writ was granted. Meanwhile a second requisition was made by the
Governor of Indiana upon the Governor of Kentucky, accompanied by a new
set of papers, in which was included the original affidavit before the justice
of the peace, and also the justice's original warrant for Hughes' arrest. A
second warrant for the arrest of the relator was issued by the Governor of
Kentucky, upon the second requisition, was delivered to the sheriff of Jeffer-
son county, and served upon the jailer of Jefferson county, and left in his
possession as his warrant of authority for the detention of relator.

The response of the jailer of Jefferson county was filed March 28th, and it
alleged that he held relator in· custody under both the warrants which had
been issued by the Governor of Kentucky. With the response were filed cer-
tified copies of the second requisition and accompanying papers, and also the
Governor's second warrant of arrest. The relator moved to strike out all that
part of the response of the jailer which set up the second requisition and ex-
tradition papers, and also specially moved to strike out the affidavit made be-
fore the justice of the peace, which motions were overruled. Relator also
demurred and excepted to the response of the jailer, and his demurrer and
exception were overruled. On March 29, 1905, the court dismissed the peti-
tion and discharged the writ of habeas corpus, and an arrangement was made
by which the relator was retained in the custody of the United States mar-
shal for the Western District of Kentucky, in the jail of Jefferson county, to
await the disposition of this appeal.

Herman Morris and Walter L. Neible (James A. Williams and
Walter J. Kohn, of counsel), for appellant.

George Du Relle and Walter L. Vaughan (Charles W. Miller,
C. C. Hadley, and Du Relle & McHenry, of counsel), for appellee.

Before LURTON, Circuit Judge, and THOMPSON and
WANTY, District Judges.

WANTY, District Judge, after making the foregoing statement,
delivered the opinion of the court.

If it is held that the indeterminate sentence law of Indiana is con-
stitutional, it is conceded by the relator that he is an escaped con-
vict; but it is contended that he is not a person charged with crime,

within the meaning of the federal Constitution and statute relating to extradition from one state to another; that the term "charged with crime," used in the Constitution and statute, means a charge by indictment or affidavit made before a magistrate, and that the charge must be a pending charge, on which the relator could be tried when returned to the demanding state, and not a judgment of conviction, upon which he would be returned to the administrative authorities; that although the relator has been tried, convicted, and sentenced in the state of Indiana, and the term of sentence has not yet expired, there is no authority under the Constitution and statute for compelling his return.

The Constitution of the United States (article 4, § 2) requires that "a person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime." The law of Congress passed in 1789 (now section 5278 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3597]), providing for the carrying out of this provision of the Constitution, says:

"Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor or chief magistrate of the state or territory from whence the person so charged has fled it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of his arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive to be delivered to such agent when he shall appear."

The statute of Kentucky of 1903 (section 1928) provides for the procedure under which extradition is ordered when a requisition is made upon the Governor.

The term "charged with crime," as used in the Constitution and statute, seems to us to have been used in its broad sense, and to include all persons accused of crime. It would be a very narrow and technical construction to hold that after the accusation, and before conviction, a person could be extradited, while after conviction, which establishes the charge conclusively, he could escape extradition. The object of the provisions of the Constitution and statute is to prevent the escape of persons charged with crime, whether convicted or unconvicted, and to secure their return and punishment if guilty. Taking the broad definition of "charged with crime" as including the responsibility for crime, the charge would not cease or be merged in the conviction, but would stand until the judgment is satisfied. It would include every person accused, until he should be acquitted, or until the judgment inflicted should be satisfied. Any other construction would prevent the return of escaped convicts upon the charge under which they had been sentenced, and defeat in many instances the ends of justice.

The relator was convicted of the crime of larceny in Indiana, and sentenced, and the term of sentence has not yet expired. That charge of larceny continues to be a charge against him until the sentence has been performed, and he therefore stands "charged with crime," within the meaning of that term as used in the federal Constitution. The question has not often been raised, but in the only instances called to our attention where it has been the foregoing views have been adopted. In re Hope, 10 N. Y. Supp. 28; Drinkall v. Spielgel, Sheriff, 68 Conn. 441, 36 Atl. 830, 36 L. R. A. 486.

This view obviates the necessity of discussing the many questions raised concerning the sufficiency of the affidavits upon which the charges of larceny before the justice of the peace and the Putnam circuit court were based, as the charge has culminated in conviction of a crime with which the relator now stands charged.

All of the questions argued relating to the Indiana indeterminate sentence statute being violative of the Indiana Constitution have been decided by the Supreme Court of that state adversely to the contention of the relator (Miller v. State, 149 Ind. 607, 49 N. E. 894, 40 L. R. A. 109), and decisions of the highest court of a state upon the constitutionality of statutes under the state Constitution are binding on the federal courts.

There can be no question that the finding of the Governor that the relator is a fugitive from justice was based on sufficient evidence. A person who, having committed within a state a crime, when sought for, to be subjected to criminal process, is found within the territory of another state, has been held by the Supreme Court to be a fugitive from justice. Ex parte Reggel, 114 U. S. 642, 5 Sup. Ct. 1148, 29 L. Ed. 250; Roberts v. Reilly, 116 U. S. 80, 6 Sup. Ct. 291, 29 L. Ed. 544.

The relator had been convicted of a crime in the state of Indiana, had not served the term for which he had been sentenced on that conviction, and when wanted he was found in the state of Kentucky. This made a prima facie case, which has not been rebutted.

The judgment of the Circuit Court is affirmed.

Note.—The following is the opinion of Evans, District Judge, in the Circuit Court:

EVANS, District Judge. The petitioner in 1898 was convicted in Indiana of the offense of larceny, and sentenced to the State Reformatory for a term of from one to fourteen years. It seems that the imprisonment was to last at least for one year, but afterwards its continuance for the remainder of the term depended upon the action of the State Board of Pardons. The good conduct of the prisoner might obtain for him either an absolute or a conditional release, as might be determined by the board. After something over four years' imprisonment, the petitioner was released by the board on a parole, the conditions of which he violated and fled to Kentucky. His arrest and return to Indiana were demanded by the executive authority of the latter state, and upon the warrant of the Governor of Kentucky he was arrested here and placed in jail. Before he could be returned to the state of Indiana, he filed a petition for a writ of habeas corpus in these proceedings, with the object of testing the legality of his arrest in Kentucky, and of his contemplated surrender to the state of Indiana.

The court has given the subject very careful consideration, and the only question involved, as it seems to the court, is one that arises out of section

5278 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3597], upon which, coupled with section 753, Rev. St. [U. S. Comp. St. 1901, p. 592], and section 2, art. 4, of the Constitution of the United States, must be based the sole right of this court in any wise to interfere, or to release the petitioner from the custody of the state officers. Those portions of the act which appear to be pertinent to the inquiry are in this language: "Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony or other crime, certified as authentic by the Governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured," etc.

It is insisted that the provisions of this section do not embrace a case precisely like this, and that the case of a convicted offender who has escaped from prison was omitted from the legislation, and cannot be supplied by the court. To say nothing of section 2, art. 4, of the federal Constitution, it seems to the court to be clear that such a construction of section 5278, Rev. St., would lead to absurd results, and is therefore inadmissible. Lau Ow Bew v. United States, 144 U. S. 59, 12 Sup. Ct. 517, 36 L. Ed. 340, and United States v. Hogg, 112 Fed. 912, 50 C. C. A. 608—a case decided by the Circuit Court of Appeals for this Circuit. It would be absurd to extradite on a mere accusation of crime, and not after conviction thereof. The word "charging," as used in the statute, cannot fairly, nor within the object, intent, and spirit of the section, be limited to accusations which merely initiate criminal proceedings, to the exclusion of cases where the accusation has been supported and maintained by a conviction and sentence on a trial in open court. In short, the "charging" is not effaced by the judgment of conviction, but is rather emphasized by it. Notwithstanding a conviction, the charge against the prisoner remains and necessarily inheres in the case. The petitioner must therefore be regarded as still being under the charge of larceny, within the meaning of that word as embraced in the statute and constitutional provision referred to.

The court thinks that it admits of no doubt that the petitioner, Hughes, is a fugitive from justice, within the legal and proper sense of that word, and that he has been demanded as such by the executive authority of the state of Indiana. True, the original demand upon the Governor of Kentucky was based upon the production of a copy of an information, accompanied by an affidavit made, not before a "magistrate," but before a clerk of a court; but some days ago, on hearing the petition, it was conceded that the production of a copy of an "information" did not of itself come up to the statutory provision, and it was pointed out by the court that there might be doubt whether it has not the right to interfere where the affidavit has been made, not before a magistrate, but before a clerk. The statute does not seem to contemplate that there shall be copies both of an indictment and of an affidavit made before a magistrate. In the opinion of the court, either of these will suffice where all of the other conditions are met. After the suggestions referred to were made, the case was adjourned from time to time, and meanwhile the executive authority of Indiana secured a copy of an affidavit made in 1898 before a justice of the peace, who doubtless is a magistrate, within the meaning of the statute, and this affidavit charged the petitioner with larceny. Other papers relative to the case, including the judgment of conviction in the court in Indiana, were also secured, and all were presented to the executive authority of Kentucky, and additional requisition papers were issued and placed in the hands of the proper officers of this state. This last-named affidavit was in existence, of course, before the petition was presented to this court. Under these circumstances, the executive authority of Indiana might mend—it did mend—its hold, and after the second requisition was issued, and after it had been placed in the hands of the jailer who had the custody of the petitioner, and after the facts were stated orally in court, the writ of habeas corpus was issued, not that the court supposed the petitioner should be discharged, but because it did not see its way clear to determine the questions involved,

and make up the record satisfactorily, without hearing from the jailer of Jefferson county in response to the writ. That officer made his response, stating the foregoing facts; and the court considers it, especially when viewed in connection with the petition and judgment of conviction, to be sufficient to support the action of the state authorities.

At the final hearing neither side presented any evidence, unless possibly one item which had been taken care of in a bill of exceptions, and the case was submitted on the petition of the prisoner, and the exhibits filed therewith, and upon the response of the jailer of Jefferson county, and the exhibits filed with it. Conceiving, upon the facts stated, that this is a case coming within section 5278, the court is of opinion that the Governor of Indiana had the right to demand the petitioner from the authorities of Kentucky, and the latter had the right to recognize and enforce that demand. This being so, the court is further of opinion that, under the proper construction of the statutory provisions referred to, the petitioner has presented no claim, technical nor substantial, to be released from the custody of which he complains, and the judgment of the court will be that the petition be dismissed, and the writ of habeas corpus discharged.