IN RE COMPLAINT IN HABEAS CORPUS OF ROWE ET AL.

[Cite as In re Rowe (1981), 67 Ohio St. 2d 115.]

(No. 80-857—Decided July 8, 1981.)

116

*Mr. Anthony G. Pizza,* prosecuting attorney, *Mr. Robert J. Gilmer* and *Mr. Joseph P. Thacker,* for appellant.

*Mr. Henry B. Herschel, Mr. James C. Sass* and *Mr. Christopher C. Lloyd,* for appellees.

STEPHENSON, J. We need not pause in this appeal for a threshold inquiry as to whether federal or state law is controlling with respect to the matter before us. It is definitively and conclusively settled that when interstate extradition is sought upon the basis that one has committed an offense in the demanding state and fled therefrom to an asylum state, federal law, both constitutional and statutory, insofar as it is applicable, is controlling. *South Carolina* v. *Bailey* (1933), 289 U. S. 412; *Innes* v. *Tobin* (1916), 240 U. S. 127; *Kentucky* v. *Dennison* (1860), 65 U. S. 66; *Prigg* v. *Pennsylvania* (1842), 41 U. S. 539. Further, it is the duty of state courts to administer the federal law as construed by the United States Supreme Court. *South Carolina* v. *Bailey, supra.*

The controlling nature of federal law with respect to interstate extradition was recognized by this court in *Ex parte Ammons* (1878), 34 Ohio St. 518.

The Uniform Criminal Extradition Act (11 Uniform Laws Annot. 51) was adopted by the General Assembly in 1937. 117 Ohio Laws 588. In obvious recognition of the supremacy of federal law, it was provided in R. C. 2963.02 as follows:

"Subject to sections 2963.01 to 2963.27, inclusive, of the Revised Code, the constitution of the United States and all acts of congress enacted in pursuance thereof, the governor shall have arrested and delivered to the executive authority of any other state of the United States, any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state."

Clause 2 of Section 2, Article IV of the United States Constitution reads as follows:

"A person charged in any State with treason, felony, or

other crime, who shall flee from justice, and be found in another State, shall on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime."

Congress implemented such provision in 1793. 1 Stat. 302. In its present form, Section 3182, Title 18, U. S. Code, reads as follows:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

The purpose of the extradition clause and the limitation upon the judicial authority of courts of the asylum state when relief is sought by habeas corpus after the issuance of governor's warrant is succinctly epitomized in *Michigan* v. *Doran* (1978), 439 U. S. 282, wherein the court at pages 287, 288-289, stated:

"The Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. *Biddinger* v. *Commissioner of Police,* 245 U. S. 128, 132-133 (1917); *Appleyard* v. *Massachusetts,* 203 U. S. 222, 227 (1906). The purpose of the Clause was to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus 'balkanize' the administration of criminal justice among the several states. * * *
"* * *

"Whatever the scope of discretion vested in the governor

of an asylum state, cf. *Kentucky* v. *Dennison,* 24 How. 66, 107 (1861), the courts of an asylum state are bound by Art. IV, Sec. 2, cf. *Compton* v. *Alabama,* 214 U. S. 1, 8, (1909), by Sec. 3182, and, where adopted, by the Uniform Criminal Extradition Act. A governor's grant of extradition is *prima facie* evidence that the constitutional and statutory requirements have been met. Cf. *Bassing* v. *Cady,* 208 U. S. 386, 392 (1908). Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable."

In light of the appellees' concession, both in the courts below and here, that no claims of invalidity were being asserted upon any defects in the extradition documents or that appellees are not the persons named in the criminal charges pending in North Carolina, the focus is upon whether appellees are fugitives from justice.

For extradition purposes under the federal Constitution, a person charged within the demanding state of committing a crime prohibited by its laws and who thereafter has left that state, no matter for what purpose or under what belief, is a fugitive from justice. *Appleyard* v. *Massachusetts* (1906), 203 U. S. 222; *Biddinger* v. *Commr. of Police* (1917), 245 U. S. 128; *Strassheim* v. *Daily* (1911), 221 U. S. 280; *Roberts* v. *Reilly* (1885), 116 U. S. 80; *English* v. *Matowitz* (1947), 148 Ohio St. 39; *Wilcox* v. *Nolze* (1878), 34 Ohio St. 520. *A fortiori,* the demanding state is not entitled under federal law to secure the return of one who was not corporally present in the demanding state at the time of commission of the offense.[1]

---

[1] The requirement that one cannot be surrendered for extradition if not in the demanding state at the time of the offense was committed, i.e., is not a fugitive from justice, is subject to a narrow exception under Ohio law. Neither the federal constitutional provision nor the implementing federal legislation constitutes such a preemption of the field of interstate extradition to deny power to the state to enact legislation not otherwise provided for by federal law. *New York* v. *O'Neill* (1959), 359 U. S. 1. Accordingly, the Ohio General Assembly has provided in R. C. 2963.06 (Section 6 of the Uniform Criminal Extradition Act) for the extradition of one charged "with committing an act in this state, or a third state, intentionally resulting in a crime

The right to raise such issue of fugitivity in a habeas corpus proceeding in the asylum state is always open to the accused, to be determined as a question of fact, as a federal constitutional right. *Michigan* v. *Doran, supra; Hyatt* v. *People, ex rel. Corkran* (1903), 188 U. S. 691; *Roberts* v. *Reilly, supra.* The right to file a writ of habeas corpus is also provided in R. C. 2963.09 (Section 10 of the Uniform Criminal Extradition Act). This court has held that fugitivity is a proper issue for consideration both by the Governor and the habeas corpus court. *In re Harris* (1959), 170 Ohio St. 151.

It is a fundamental proposition from which there is no dissent that guilt or innocence with respect to the criminal charges is not a proper area of inquiry either by the Governor of the asylum state or the habeas corpus court. The Ohio General Assembly has by positive enactment prohibited such inquiry "except as it may be involved in identifying the person held as the person charged with the crime." R. C. 2963.18 (Section 20 of the Uniform Criminal Extradition Act). Such rule, however, does not foreclose inquiry into the fugitivity defense if raised and evidence, if probative of the fact that accused is not a fugitive even though it may also incidentally tend to prove an alibi defense, is admissible. See *State, ex rel. Davey,* v. *Owen* (1937), 133 Ohio St. 96.

The issuance of the Governor's warrant herein, pursuant to R. C. 2963.07, raised a presumption that appellees were in lawful custody and the burden to overcome such *prima facie* case in favor of North Carolina by sufficient proof rested upon appellees. *Michigan* v. *Doran, supra* (439 U. S. 282); *South Carolina* v. *Bailey, supra* (289 U. S. 412).

To rebut the presumption of the lawfulness of their arrests under the Governor's warrant, appellees called 14 witnesses whose testimony, in combination, placed appellees in Toledo, Ohio, in the September 14, 1978 through September 18, 1978 time period. The witnesses were primarily, but not wholly, friends, relatives, and acquaintances of appellees. Documen-

---

in the state whose executive authority is making the demand * * * even though the accused was not in that state at the time of commission of the crime, and has not fled therefrom." See *In re Harris* (1959), 170 Ohio St. 151. The constitutionality of the predecessor to R. C. 2963.06 was upheld by this court in *English* v. *Matowitz* (1947), 148 Ohio St. 39.

tary evidence respecting certain incidents was introduced to support the ability of the witnesses to recall appellees' presence upon specified dates. None of the appellees, though each was present throughout the three-day hearing, personally testified in support of their fugitivity defense.

Respondent introduced in evidence the testimony of two witnesses. One was a police officer, Thomas C. Beck, whose testimony was to the effect he observed appellees Mitchell John Pakulski and Donna Rowe at a bar in Waynesville, North Carolina, on the evening of September 15, 1978. Marion Rupe, a first cousin of appellees, corroborated the testimony of the police officer by testifying that she also observed Donna Rowe in the afternoon of September 15, 1978, in Waynesville and again observed all appellees in the early afternoon of September 15, 1978.[2]

The trial court, after concluding the court was without authority to determine if appellees committed the crime with which they were charged, and was limited to determining if appellees were in the demanding state on or about the date of the offense, then stated in its judgment entry: "Given this

---

[2] Officer Beck, in substance, testified that at about 8:00 P.M. on September 15, 1978, he observed appellee Donna Rowe in Casa Grande Club, a bar located in Waynesville, North Carolina. He further testified he had observed Donna Rowe on previous dates but was not personally acquainted with her, and that between 11:30 and 11:45 P.M., he returned to the bar and again observed Donna Rowe who, at that time, was in the company of Mitchell John Pakulski whom he knew by sight but not personally from a prior unrelated criminal investigation. He further testified that in his second visit to the bar he observed the similar clothing worn by Donna Rowe and Pakulski. Each was dressed in blue jeans, the legs of which were tucked into boots and each was wearing a hat with a feather in it.

Marion Rupe, in substance, testified she was a first cousin of both Donna Rowe and Elliot Rowe III and knew both all her life; that she observed both Donna Rowe and Elliot Rowe III at her sister's trailer home in Waynesville at 4:30 P.M. on September 15, 1978. She further testified that she again observed Donna Rowe on September 15, 1978, when Donna arrived at the Casa Grande Club at about 7:30 P.M. She observed Mitchell John Pakulski arrive at the club at about 8:15 P.M., and leave at about 8:30 P.M. The witness again observed Donna at about 11:15 P.M. outside the bar when the witness left the bar and returned to the trailer home of her sister. At about 2:00 A.M. on September 16, 1978, the witness saw Donna at the trailer. She testified she saw the three appellees when they came to her home at 1:15 P.M. on September 16, 1978. Her testimony tended to corroborate the testimony of Officer Beck as to the presence of Donna Rowe and Pakulski at the bar on the evening of September 15th, and as to the manner of their dress.

authority, it becomes clear to this Court that it has to be given the authority to determine the credibility of evidence or testimony or any such hearing becomes a charade." The Court of Appeals, in its opinion, issued with respect to an application for reconsideration, agreed that the record disclosed a conflict of evidence upon the fugitivity issue but, essentially, approved the reasoning of the trial court as to its authority to determine the credibility of witnesses.

The reasoning that a habeas corpus court has, in effect, an unlimited right to pass upon the credibility of witnesses and the weight of evidence as in any ordinary proceeding poses initially the issue of the proper degree of proof required in a habeas corpus proceeding to prevent extradition and, secondly, the issue of whether such standard was properly applied in the case *sub judice.*

With respect to the evidentiary standard to be applied in a habeas corpus proceeding brought to bar extradition and to discharge a petitioner, the United States Supreme Court has utilized varying language. In *Munsey* v. *Clough* (1905), 196 U. S. 364, 374, the court stated that, "[w]hen it is conceded, or when it is so conclusively proved, that no question can be made that the person was not within the demanding State when the crime is said to have been committed, and his arrest is sought on the ground only of a constructive presence at that time, in the demanding State, then the court will discharge the defendant. *Hyatt* v. *Cockran,* 188 U. S. 691, affirming the judgment of the New York Court of Appeals, 172 N. Y. 176. But the court will not discharge a defendant arrested under the governor's warrant where there is merely contradictory evidence on the subject of presence in or absence from the State, as *habeas corpus* is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of the accused.***"

In *South Carolina* v. *Bailey, supra* (289 U. S. 412) at 421-422, the court stated:

"Considering the Constitution and statute and the declarations of this Court, we may not properly approve the discharge of the respondent unless it appears from the record that he succeeded in showing by clear and satisfactory evidence that he was outside the limits of South Carolina at the

time of the homicide. Stated otherwise, he should not have been released unless it appeared beyond reasonable doubt that he was without the State of South Carolina when the alleged offense was committed and, consequently, could not be a fugitive from her justice."

"The record discloses only a conflict of evidence; the requirement which we have indicated has not been met; and the challenged judgment must be reversed."

While varying in the articulation of the evidentiary standard by use of such terms as "conclusively," "clear and convincing" or "beyond a reasonable doubt," the *Clough* and *Bailey* rationale that when conflicting evidence upon the fugitivity issue appears, habeas corpus should not be granted has been widely accepted and applied in both state and federal courts. *People, ex rel. Garner, v. Clutts* (1960), 20 Ill. 2d 447, 170 N.E. 2d 538; *Bazaldua v. Hanrahan* (1979), 92 N.M. 596, 592 P. 2d 512; *Walton v. Idaho* (1977), 98 Idaho 442, 566 P. 2d 765; *Bryson v. Warden* (1980), 287 Md. 467, 413 A. 2d 554; *State, ex rel. Lingerfelt, v. Gardner* (Tenn. Crim. App. 1979), 591 S.W. 2d 777; *Ex parte Rabinwitz* (1937), 61 Okla. Crim. 83, 65 P. 2d 1236; *Reeves v. State, ex rel. Thompson* (1956), 199 Tenn. 598, 288 S.W. 2d 451; *Smith v. Idaho* (C.A. 9, 1967), 373 F. 2d 149; *United States, ex rel. Vitiello, v. Flood* (C.A. 2, 1967), 374 F. 2d 554; *United States, ex rel. Grano, v. Anderson* (D.C. Del. 1970), 318 F. Supp. 263; *Garrison v. Smith* (D.C.N.D. Miss., W.D., 1976), 413 F. Supp. 747.

In *People, ex rel. Garner, v. Clutts, supra,* the Supreme Court of Illinois, after quoting the conflicting evidence pronouncement in *Bailey,* stated at page 456, that "[f]rom this language, as well as the whole body of precedent in this court and the Federal Courts, it emerges clearly that neither the trial court nor a court of review is at liberty to weigh the evidence, or to discharge an accused, when the evidence on the fact of his presence in or absence from the demanding State is merely contradictory."

We agree and conclude under the *ratio decidendi* of *Munsey v. Clough* and *South Carolina v. Bailey,* first, the burden is upon the petitioner to rebut the presumption created by the issuance of the Governor's warrant that the petitioner

is a fugitive from justice by proof beyond a reasonable doubt.[3] Secondly, that where there is contradictory evidence upon the issue of fugitivity and there is substantial and credible evidence placing the petitioner in the demanding state on or about the date of the offense, the petitioner has not met the burden placed upon him and the habeas corpus court may not, under the guise of passing upon the credibility of witnesses, resolve the fact of the petitioner's presence in the demanding state in favor of the petitioner and discharge him from custody. To conclude otherwise and hold the court possesses its ordinary unlimited authority to pass upon the credibility of witnesses and resolve disputed questions of material fact would not be consonant with the summary and unique character of extradition proceedings wherein issues of guilt and innocence, including alibi, are for resolution in the courts of the demanding state. This is not to deny to the habeas corpus court its authority to pass upon the credibility of witnesses, but to limit that function in extradition habeas corpus adjudication in conformity with United States Supreme Court pronouncements upon the issue.

Appellees argue that inconsistencies, both internally and between the testimony of each witness for respondent, are so great that it was "inconsistent and completely unreliable," and that "[t]he overwhelming credible evidence presented to the Court on behalf of all three petitioners and the evidence introduced by the respondent state of North Carolina is such that the petitioners have met any burden of proof which might be required to show that the petitioners were not in the state of North Carolina on or about September 17, 1978" and, in ef-

---

[3] Because the United States Supreme Court has utilized varying phraseology with respect to the degree of proof which the habeas corpus petitioner must adduce to avert extradition, *i.e.,* "conclusively proved" in *Munsey* v. *Clough* (1905), 196 U. S. 364, 374; "clearly and satisfactorily" in *McNichols* v. *Pease* (1907), 207 U. S. 100, 112; "clear and satisfactory" and "beyond reasonable doubt" in *South Carolina* v. *Bailey* (1933), 289 U. S. 412, 421, 422, the courts of various jurisdictions have likewise varied in the reported cases in the articulation of the proper standard. See listing 39 American Jurisprudence 2d 287, fn. 14, Section 154, Habeas Corpus. Inasmuch as the standards adopted by the United States Supreme Court are applicable to the state courts, it necessarily follows that the usual meaning of such terms as defined by Ohio statutory and decisional law is not controlling. Arguably, the varying phraseology used by the United States Supreme Court was intended to be functionally equivalent and to mean simply that the burden upon the petitioner is extremely heavy.

fect, there is no conflict in the credible evidence in the record. We disagree. While skillful cross-examination of the North Carolina witnesses did disclose conflicts in the testimony of each of the witnesses for respondent, we are not persuaded they were of such a major nature to justify a conclusion that the testimony was so insubstantial and unreliable upon the fugitivity issue that it could fairly be disregarded.

The testimony of the witnesses of the demanding state, if true, placed appellees in North Carolina both on September 15 and 16, 1978, the murder occurring on September 17, 1978. The testimony of appellees' witnesses, if true, established the appellees were in Toledo, Ohio, both before, on and after the date of the alleged murder. In our view, in the words of *Bailey*, at page 419, "[i]t is not possible to say with certainty where the truth lies," and particularly so when none of the appellees, who knew with certainty their whereabouts on September 17, 1978, testified in their own behalf.

While this court will not upon review ordinarily weigh the evidence, this court will review the record to determine if the evidence is of such probative force and certainty that it attains the requisite degree of proof. *Cole* v. *McClure* (1913), 88 Ohio St. 1. Concluding that the evidence is insufficient within the "reasonable doubt" standard hereinabove adopted, we reverse the judgment of the Court of Appeals and appellees are remanded to the custody of respondent for surrender to the proper agents of the state of North Carolina.

*Judgment reversed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting for C. BROWN, J.