308

CARPENTER, APPELLANT, *v.*
JAMERSON, SHERIFF, APPELLEE.

[Cite as Carpenter v. Jamerson (1982), 69 Ohio St. 2d 308.]

(No. 81-517—Decided February 19, 1982.)

*Roger F. DiPaolo Co., L.P.A.,* and *Mr. Roger F. DiPaolo,* for appellant.

*Mr. David A. Sed,* for appellee.

KRUPANSKY, J. The issue presented is whether the trial court in considering petitioner's writ of habeas corpus complied fully with all constitutional, statutory and case law requirements imposed by Ohio and federal law. We conclude the procedures followed were proper, and therefore, the judgment of the Court of Appeals affirming the trial court's denial of petitioner's writ of habeas corpus is affirmed.

Petitioner's major contentions are threefold: (I) the habeas corpus hearing afforded the petitioner pursuant to R. C. 2963.09 was not a full and meaningful hearing as required by due process; (II) the petitioner is not a "fugitive from justice" as contemplated by the extradition statutes since he was affirmatively advised by Georgia authorities to leave the state for his own safety; and (III) it was against the manifest weight of the evidence and error for the trial court to deny the petitioner's writ of habeas corpus because the evidence presented at the hearing was uncontroverted and fully supportive of petitioner's position that he is not a fugitive from justice. Following is a discussion of these three assertions.

## I.

R. C. 2963.09 provides for a procedure whereby an individual arrested in order to be extradited may test the legality of that arrest through a habeas corpus hearing. The scope of this hearing is very limited and well-defined by case law. *Michigan* v. *Doran* (1978), 439 U. S. 282, 289, and *In re Harris* (1959), 170 Ohio St. 151, together delineate the permissible extent of these hearings, which are limited to the following five determinations: (1) whether the petitioner has been charged with an offense under the laws of the state demanding extradition; (2) whether the petitioner is the individual named in the extradition request; (3) whether the peti-

tioner is a fugitive; (4) whether the extradition is not for the purpose of enforcing any civil liability; and (5) whether the extradition documents on their face are in order.

The courts of our nation have repeatedly emphasized the abbreviated nature of extradition proceedings held in an asylum state. In *Doran, supra,* at page 288, the United States Supreme Court stated:

"Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of Art. IV, §2, cl. 2, of the constitution. * * * The clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial."

Likewise, as this court stated in *Wilcox* v. *Nolze* (1878), 34 Ohio St. 520, at pages 523-524:

"The governor of a state, in issuing his warrant of extradition of a fugitive from justice, acts in an executive, and not in a judicial capacity. He is not permitted to try the question whether the accused is guilty or not guilty; he is not to regard a departure from the prescribed forms for making the application, or as to the manner of charging the crime, in any manner not of the substance; and he is not to be controlled by the question whether the offense is or is not a crime in his own state, the inquiry being whether the act is punishable as a crime in the demanding state. Nor have the courts larger powers, in any of these respects, than the governor. * * * "

In *State, ex rel. Toht,* v. *McClure* (1950), 87 Ohio App. 520, the Montgomery County Court of Appeals determined, in a proceeding in habeas corpus, instituted by a fugitive from justice who is being held in this state on a warrant of extradition of a governor of a sister state, an Ohio court has no power to consider whether the constitutional rights of the petitioner are likely to be violated if he is returned to the sister state.

In order to satisfy petitioner's view of a hearing complying with due process the courts of Ohio would in essence be required to ignore the above and similar holdings and conduct a full-fledged trial to determine the validity of the charges lodged by the state of Georgia prior to allowing the petitioner's extradition. Clearly, the applicable statutes and case law do not provide for such a burdensome hearing in the asylum

state. Indeed, R. C. 2963.18 explicitly mandates otherwise in its statement:

"The guilt or innocence of an accused as to the crime of which he is charged may not be inquired into by the governor or in any proceeding after a demand for extradition accompanied by a charge of crime under section 2963.03 of the Revised Code has been presented by the governor * * *."

Taking account of the relevant evidence it is apparent the first two determinations to be made according to *Doran* and *Harris* may be quickly resolved, *i.e.,* (1) petitioner admitted he has been charged with an offense under the laws of Georgia; and (2) petitioner also admitted he is the individual named in the extradition request—*e.g.,* from petitioner's testimony he does not focus on denial of either of the above two propositions, but rather, the thrust of petitioner's case is that he left the state of Georgia with consent.

After reviewing the pertinent authority and the scope of inquiry of the habeas corpus hearing at issue, we conclude the habeas corpus proceeding in the instant action fully complies with the requirements of due process.

## II.

Clause 2, Section 2 of Article IV of the United States Constitution provides:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

Section 3182, Title 18, U. S. Code, implements this clause of the Constitution and prescribes the procedure to be followed "[w]henever the executive authority of any State or Territory demands any person as a *fugitive from justice.* * * * " (Emphasis added.) The petitioner asserts he is not amenable to extradition as a "fugitive from justice" since he "did not leave the state of Georgia after committing a crime for which he would be prosecuted, did not conceal his whereabouts from the Georgia authorities [and] was affirmatively advised to leave the state by those of whom he had a duty to obey * * *." In reaching this conclusion the petitioner primarily relies upon dictionary definitions characterizing a "fugitive" as one who

flees or conceals himself in an attempt to escape prosecution. As will be shown below, these definitions are too narrow to be effectively used herein.

The Court of Appeals in *Hughes* v. *Pflanz* (C. A. 6, 1905), 138 F. 980, affirmed the dismissal of a writ of habeas corpus filed by a petitioner being extradited for allegedly violating the terms of his parole agreement. In *Hughes* the court, at page 983, stated:

"The term 'charged with crime,' as used in the Constitution and statute, seems to us to have been used in its broad sense, and to include all persons accused of crime.* * * The object of the provisions of the Constitution and statute is to prevent the escape of persons charged with crime, whether convicted or unconvicted, and to secure their return and punishment if guilty. Taking the broad definition of 'charged with crime' as including the responsibility for crime, the charge would not cease or be merged in the conviction, but would stand until the judgment is satisfied.* * * "

Similarly, an individual such as the petitioner who remains on probation has not yet "satisfied" the judgment imposed upon him by the court. In the instant case a term of petitioner's probation was the payment of a fine and restitution. The petitioner testified at his habeas corpus hearing that he had not made payments for almost one year and was in arrears as to these payments. Thus, he *admitted* he had violated the conditions of his probation.

It is unimportant whether petitioner's probation officer initially granted petitioner permission to leave Georgia or whether he at one point instructed the petitioner to temporarily cease making payments on his fine and restitution. Now the Georgia authorities, regardless of any earlier posture, are making it abundantly clear they want the petitioner returned to Georgia for violation of his probation.

Like the petitioner in *Hughes,* the petitioner herein is an individual "charged with a crime" who has not satisfied the judgment against him. Furthermore, while the petitioner has continually asserted he was advised by a police officer to leave Georgia and he later said he received permission from his probation officer to thus leave, he has never established beyond a reasonable doubt who had the *authority* to grant such permis-

sion. Nowhere in his testimony did petitioner mention the court or judge granted such permission. Simply stated, the petitioner has never rebutted by proof beyond a reasonable doubt the presumption attached to the governor's warrant that he is a fugitive from justice. Therefore, we find the petitioner is a fugitive from justice who is subject to extradition. With this determination we have completed the third category promulgated by *Doran* and *Harris*.

## III.

Petitioner finally contends it is against the manifest weight of the evidence and error for the trial court to deny his writ of habeas corpus. We disagree.

As most recently stated in *In re Rowe* (1981), 67 Ohio St. 2d 115, paragraph two of the syllabus, " * * * a warrant issued by the Governor of Ohio pursuant to R. C. 2963.07, for extradition to the demanding state, * * * is *prima facie evidence* that constitutional and statutory requirements have been met." This court further stated in paragraph three of the syllabus, " * * * the burden is upon the petitioner to *rebut the presumption* that petitioner is *prima facie* in lawful custody by *proof beyond a reasonable doubt. * * * *" (Emphasis added.)

While the petitioner recognizes the burden placed upon him to rebut this presumption of validity granted a governor's warrant, he asserts this *prima facie* case was rebutted beyond a reasonable doubt by the testimony presented by him and his wife. Reviewing this testimony consisting primarily of hearsay statements in conjunction with the governor's warrant, the Common Pleas Court decided to deny petitioner's request for habeas corpus. We do not feel this decision can be said to be against the manifest weight of the evidence; especially since the trial judge must weigh the evidence and establish the credibility of the witnesses.

The fourth requirement as stated in *Harris* has also been fulfilled since the extradition proceeding was instituted because the petitioner violated the terms and conditions of his probation. The mere fact that payment of restitution was a condition of petitioner's probation does not transform this action into one to enforce a civil liability.

And finally, the extradition documents on their face are in order. As alluded to earlier and stated by the Court of Appeals

for Lucas County in *In re Roma* (1948), 82 Ohio App. 414, 420: " * * * [U]pon the issuance of the Governor's warrant, a presumption of its legality arises and it is *prima facie* evidence that the proceedings had prior to its issuance were in all respects regular and in conformity with the laws of this state."

The petitioner challenges this conclusion asserting the extradition papers were not in proper order due to a clerical error which resulted in petitioner's name being mistakenly placed in a space designated for the name of the clerk of courts. Our investigation, however, reveals that such a mistake is not fatal to the regularity of these documents, and therefore, we refuse to adopt petitioner's hypertechnical reading of these documents and declare the instant extradition papers invalid.

The petitioner in the instant action has not overcome this presumption of regularity and legality, and therefore, this court must find the extradition documents on their face are in order, thus satisfying the fifth requirement of *Doran.*

In summary, the hearing held in the Court of Common Pleas on petitioner's writ of habeas corpus complied fully with the relevant constitutional, statutory and case law requirements. Furthermore, the evidence presented supports the conclusion petitioner is a fugitive from justice subject to extradition. Therefore, we uphold the lower courts' denial of petitioner's writ of habeas corpus.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN and LOCHER, JJ., concur.

SWEENEY, HOLMES and C. BROWN, JJ., dissent.

CLIFFORD F. BROWN, J., dissenting. I believe the petitioner was entitled to discharge on a writ of habeas corpus. Accordingly, I dissent.

Petitioner's view of a hearing complying with due process does not require the courts of Ohio "to ignore" the many holdings cited in the majority opinion "and conduct a full-fledged trial to determine the validity of the charges lodged by the state of Georgia prior to allowing the petitioner's extradition."

Neither does petitioner request the Ohio courts to determine his guilt or innocence of the crime charged in Georgia.

A habeas corpus hearing challenging extradition requires that five determinations be made by the court. *Michigan* v. *Doran* (1978), 439 U. S. 282, 289; *In re Harris* (1959), 170 Ohio St. 151. Unless all five issues are determined in favor of the state, the court must deny extradition.

One such issue is whether petitioner is a fugitive from justice. The right to raise the issue of fugitivity in a habeas corpus proceeding in the asylum state is granted by the United States Constitution and is a *question of fact* to be determined by the trial court. See *Michigan* v. *Doran, supra,* at 289; *In re Rowe* (1981), 67 Ohio St. 2d 115, at 120. The trial court erroneously concluded it did not have authority to determine fugitivity as indicated by its order of June 20, 1980, as follows:

"Further, *the Plaintiff claims that he is not a fugitive from the State of Georgia* and offered evidence indicating that his probation officer permitted him to come to the State of Ohio.

"As to this latter complaint, *this Court does not have the authority nor jurisdiction to make a determination* whether this Defendant [*sic*] did or did not violate the terms of his probation." (Emphasis added.)

Petitioner was not a "fugitive from justice" as defined in the Extradition Act of Ohio, R. C. 2963.02, as follows:

" * * * *any person charged* in that state with treason, felony, or other crime, *who has fled from justice* and is found in this state." (Emphasis added.)

Black's Law Dictionary (5 Ed.) defines "fugitive from justice" as follows:

"A person who, having committed a crime, *flees* from jurisdiction of court where crime was committed or departs from his usual place of abode and *conceals himself* within the district." (Emphasis added.)

Other law dictionaries, and text from 57 Ohio Jurisprudence 2d 363, Words and Phrases, define the term essentially the same way.

It is uncontroverted that the petitioner left the state of Georgia with the consent of his probation officer. He never fled from justice, nor concealed himself from the Georgia or Ohio authorities. Therefore, petitioner conclusively established

at the habeas corpus hearing that he was not a "fugitive from justice" from Georgia. It is irrelevant that "[n]owhere in his testimony did petitioner mention the court or judge granting such permission." Moreover, the majority discounts petitioner's testimony as primarily "hearsay statements." Regardless of its characterization, the testimony was admitted without objection, with no evidence offered by the state of Georgia to rebut it. Petitioner's testimony not only overcame the rebuttable presumption of the validity of the governor's warrant for extradition, it conclusively established that petitioner was not "a fugitive." Therefore, petitioner should have been granted a writ of habeas corpus, and discharged.

SWEENEY AND HOLMES, JJ., concur in the foregoing dissenting opinion.