OPINION
These are accelerated appeals taken from a final judgment of the Ashtabula County Court of Common Pleas. Appellant, the State of Ohio on behalf of the Ashtabula County Sheriff William Johnson, appeals from the granting of a petition for a writ of habeas corpus.
Appellee, Wilfredo Ali, was convicted of armed robbery and sentenced to life imprisonment in Escambia County, Florida, in 1976.[1] Despite the imposition of an ostensible life sentence, appellee was paroled on February 10, 1981. Pursuant to the terms of his release, appellee was to remain on parole under the supervision of the Florida Parole and Probation Commission until February 10, 1992.
At some point after his release, appellee sought and received permission to move to Ohio, whereupon the Ohio Adult Parole Authority began to exercise parole supervision over him. In July 1988, it was alleged that appellee violated two of the terms of his Florida parole while under supervision in Ohio, to wit: (1) he changed his residence without procuring the required consent, thereby absconding from parole supervision; and (2) he failed to report to his parole officer on July 6, 1988 as previously ordered. Based on these violations, the State of Florida issued a warrant for appellee's arrest on October 14, 1988.
Despite the issuance of this warrant, appellee was not immediately taken into custody. Indeed, appellee was apparently not arrested for violating the terms of his Florida parole until he was seized in June 1996 in Ashtabula County. Upon being notified that appellee was incarcerated in Ohio, the Governor of Florida filed a demand for extradition on August 28, 1996. In this demand, the State of Florida alleged that appellee stood convicted of the crime of armed robbery, that he had been granted parole, and that he had violated the terms thereof.
On September 11, 1996, then Governor of Ohio George Voinovich issued a warrant for the arrest of appellee. The governor's warrant instructed the Ashtabula County Sheriff to bring appellee before an Ohio court and, if directed by that court, to extradite appellee to Florida.
At some point prior to the issuance of the governor's warrant, appellee had been released from the county jail. Upon receipt of the governor's warrant, however, the Ashtabula County Sheriff's Office again took appellee into custody. Appellee subsequently requested that he be released pending an extradition hearing. A bail hearing was conducted on October 17, 1996. At that time, the trial court granted the application for bail, thereby freeing appellee pursuant to a $25,000 recognizance bond.
The matter was originally scheduled for an extradition hearing on December 27, 1996. One day prior to this, counsel for appellee filed a petition for a writ of habeas corpus. This filing was erroneously assigned a new trial court case number. Thereafter, the two cases were consolidated in the trial court for all purposes.
As grounds for the claim that he was being unlawfully restrained of his liberty by the governor's warrant, appellee asserted in his habeas corpus petition that the extradition demand filed by the Governor of Florida was invalid. According to the petition, there were two primary errors in the demand for extradition, to wit: it improperly alleged that appellee was a fugitive from justice and it incorrectly suggested that appellee was physically present in the State of Florida when he violated the terms of his parole.
The extradition hearing was ultimately delayed until March 21, 1997. At that time, extradition demand was taken up by the trial court in the context of adjudicating the habeas corpus petition. Appellee appeared with counsel and testified during this proceeding. Thereafter, the parties submitted memorandums of law to the trial court.
On July 31, 1998, the trial court finally issued its judgment.[2]
With regard to the extradition demand filed by the State of Florida, the trial court ruled that the document was defective on its face because appellee "did not flee the State of Florida and is not a fugitive from justice as alleged in the demand submitted by Florida Governor, Lawton Chiles, to the State of Ohio." In light of the purportedly defective extradition demand, the trial court concluded that appellee had been unlawfully detained by the Ashtabula County Sheriff pursuant to the governor's warrant. The trial court discharged appellee from all custody and cancelled the recognizance bond which had been previously set. As for the habeas corpus petition, the trial court ruled in appellee's favor, thereby effectively precluding his extradition to Florida. In doing so, the trial court stated that "[t]he Petitioner's Request for a Writ of Habeas Corpus is hereby GRANTED and the Petitioner, Wilfredo Ali, is determined to be unlawfully detained and he is forthwith discharged from custody of Ashtabula County Sheriff William Johnson."
From this judgment, the state timely appealed to this court.[3]
It now asserts the following assignment of error:
 "The trial court erred in granting appellee's request for a writ of habeas corpus."
Appellee tardily filed an answer brief responding to the state's assignment of error. This brief was stricken for failure to comply with App.R. 11.1(C) and Loc.R. 4(F) of the Eleventh District Court of Appeals.
In considering the assigned error, we find it helpful to bifurcate the trial court's ruling. Consequently, we will first examine the trial court's decision with respect to the habeas corpus petition, and then we will turn our attention to the question of whether appellee is subject to being extradited to Florida.
 The purpose of a habeas corpus proceeding is for the court to conduct an inquiry into whether the petitioner is being unlawfully restrained of his or her liberty at the present time. Ball v. Maxwell (1965), 1 Ohio St.2d 77, 78 ("To entitle one to relief by habeas corpus a determination of the action in petitioner's favor must effectuate a release from present confinement"); Tomkalski v. Maxwell (1963), 175 Ohio St. 377, 378
("Habeas corpus is directed only to present confinement"); Page v. Green (1963), 174 Ohio St. 178, 179 ("The purpose of a proceeding in habeas corpus is to inquire into the legality of the present restraint of the petitioner"). In other words, habeas corpus will not lie if the petitioner is not presently confined.
Because the goal of a habeas corpus petition is to effectuate a release from present confinement, the petitioner must still be subjected to some form of custodial detention at the time the petition is adjudicated. Petrowski v. State (June 30, 1999), Lake App. No. 98-L-057, unreported, at 2, 1999 WL 454478. If the petitioner's confinement in prison or jail has terminated, then the legality of such restraint can no longer be determined in a habeas corpus proceeding. Id.
A petition for a writ of habeas corpus, therefore, becomes moot if the petitioner is released prior to its adjudication. Pewittv. Lorain Correctional Inst. (1992), 64 Ohio St.3d 470, 472;McDonald v. Keiter (1971), 25 Ohio St.2d 281, 283. This holds true even if the petition was originally filed when the petitioner was subject to confinement.
In the case at bar, appellee was discharged from the Ashtabula County Jail on October 17, 1996, pursuant to the recognizance bond. As a result, appellee should not have filed the December 26, 1996 petition for a writ of habeas corpus because he was not incarcerated at that time. See, e.g., Petrowski, 1999 WL 454478, at 2 (wherein this court held that the petitioner should not have filed a habeas corpus petition after he was released from jail on bond pending an extradition hearing). See, also, In re Fincher
(1958), 107 Ohio App. 40, 42 (holding that when a petitioner is released on the giving of an appearance bond after being arrested on a criminal warrant, he is not restrained of his liberty so as to be entitled to a writ of habeas corpus).
Appellee filed the petition for a writ of habeas corpus under the auspices of R.C. 2963.09. This statute provides in part:
 "No person arrested upon a warrant under section 2963.07 of the Revised Code shall be delivered to the agent whom the executive authority demanding him appointed to receive him unless such person is first taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel. If the prisoner or his counsel desires to test the legality of his arrest, the judge shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state." (Emphasis added.)
It is apparent that R.C. 2963.09 does authorize the filing of a habeas corpus petition by an individual who is facing the possibility of extradition after being arrested upon a governor's warrant. The statute, however, clearly envisions that the petitioner must be in custody when applying for such an extraordinary writ. Thus, R.C.2963.09 is in accord with established case law in this regard.
In the case sub judice, the trial court should have simply dismissed appellee's habeas corpus petition as being moot. The trial court erred in entering judgment for appellee by ostensibly granting the extraordinary writ because appellee was not in custody, either when the matter came on for hearing on March 21, 1997 or when the court finally rendered its decision on July 31, 1998.[4]
Although appellee and his counsel incorrectly filed the habeas corpus petition, we will nevertheless consider the substance of the trial court's ruling on the extradition request made by the State of Florida. In light of the fact that appellee had filed the petition, R.C. 2963.09 governed the evidentiary hearing conducted by the trial court in the instant case. A habeas corpus action brought in an asylum state by an alleged fugitive from justice who has been arrested on a warrant of extradition is a summary proceeding. The scope of such a proceeding is very limited and well-defined by case law. Indeed, the permissible extent of the hearing is limited to the following five determinations: (1) whether the petitioner has been charged with an offense under the laws of the state demanding extradition; (2) whether the petitioner is the individual named in the extradition request; (3) whether the petitioner is a fugitive; (4) whether the extradition is not for the purpose of enforcing any civil liability; and (5) whether the extradition documents on their face are in order.Carpenter v. Jamerson (1982), 69 Ohio St.2d 308, 310-311, citingMichigan v. Doran (1978), 439 U.S. 282, and In re Harris (1959),170 Ohio St. 151.
In the case at bar, appellee essentially challenged two of the five determinations, to wit: whether he was a fugitive and whether the extradition documents on their face were in order. Based on our reading of the judgment entry on appeal, it would appear that the trial court agreed with appellee to the effect that he was not a fugitive from justice and that the extradition demand filed by the State of Florida was facially defective. We will examine each of these determinations in turn.
As a general matter, an accused must be a fugitive from justice before a demand for extradition will be recognized under Ohio law. In this regard, R.C. 2963.03 states in pertinent part:
 "No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless the demand is in writing alleging, except in cases arising under section 2963.06 of the Revised Code, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state * * *."
As R.C. 2963.03 suggests, however, cases arising under R.C.2963.06 are an exception to the general rule. The latter statute reads as follows:
 "The governor may surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section 2963.03 of the Revised Code with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and sections 2963.01 to 2963.27, inclusive, of the Revised Code, apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom."
The Supreme Court of Ohio has described the intent behind R.C.2963.06 in this manner:
 "Prior to the adoption of the Uniform Extradition Act, it was possible to extradite only a criminal who could be said to be a `fugitive,' i.e., one who had been physically present in the state in which he committed a crime and had fled therefrom. To remedy this situation, several of the states enacted what is generally known as Section 6 of the Uniform Extradition Act. The Ohio enactment is Section 2963.06, Revised Code." Harris, 170 Ohio St. at 156.
It is manifestly apparent that R.C. 2963.06 authorizes the extradition of an individual who commits an act in Ohio which constitutes a criminal offense in the demanding state. In reExtradition of Adams (1989), 63 Ohio App.3d 638, 642. As such, it stands as an express exception to the requirement of flight set forth in R.C. 2963.03. Thus, it is uncontroverted that appellee can be subject to extradition for committing an act in the asylum state of Ohio which violated the terms of his parole in the demanding state of Florida.
Moreover, it is well-settled that an individual may be subject to extradition based on the violation of parole or probation. For instance, the Supreme Court of Ohio has expressly held that "the term `fugitive from justice' as contemplated by the extradition statutes includes an individual who violates the conditions of his probation." Carpenter, 69 Ohio St.2d at paragraph two of the syllabus. The same principle holds true in the context of a parole violation.
R.C. 2963.06 is applicable to the present case. Appellee was alleged to have committed acts in Ohio which constituted a violation of the terms of his parole previously imposed upon him by the State of Florida, to wit: he absconded from parole supervision by changing his residence without first procuring the required consent and he failed to report to his parole officer as ordered. It did not matter that appellee was not present in the demanding state when he violated his parole and, consequently, did not thereafter flee from that jurisdiction. Given the applicability of the exception codified in R.C. 2963.06, the issue of flight was inapposite. Hence, notwithstanding his assertions to the contrary, appellee was properly alleged to be a fugitive from justice in the demand for extradition submitted by the Governor of Florida and in the subsequent warrant issued by the Governor of Ohio.
We also disagree with appellee's contention and the trial court's conclusion that the extradition documents were somehow not in order. In this regard, it is well-established that when the Governor of Ohio issues a warrant for the extradition of an accused to the demanding state pursuant to R.C. 2963.07, the governor's warrant is prima facie evidence that constitutional and statutory requirements have been met. Carpenter,69 Ohio St.2d at 314, citing In re Rowe (1981), 67 Ohio St.2d 115, paragraph two of the syllabus. The burden is upon the petitioner to rebut the presumption that he is prima facie in lawful custody by proof beyond a reasonable doubt. Carpenter, 69 Ohio St.2d at 314, citing Rowe, 67 Ohio St.2d at paragraph three of the syllabus.
In the matter at bar, the warrant issued by then Governor Voinovich on September 11, 1996 was prima facie evidence that all constitutional and statutory requirements had been met. In an attempt to rebut this presumption, appellee introduced a copy of the demand for extradition filed by the State of Florida during the evidentiary hearing held on March 21, 1997. According to appellee, this document was defective on its face because it alleged that he had violated the terms of his parole while in Florida and then fled from that jurisdiction before seeking refuge in Ohio. Appellee argued that the governor's warrant under which he was ultimately arrested was also necessarily invalid because it was predicated upon the allegations leveled at him in the supposedly defective demand for extradition submitted by the State of Florida.
The extradition demand in question is a seemingly standardized form used by the State of Florida when requesting that an accused be extradited back to that jurisdiction. It does contain certain "boilerplate" language that conforms to the scenario envisioned by R.C. 2963.03 in which the accused was present in the demanding state at the time of the commission of the alleged crime and then thereafter fled from that state.
The document, however, makes it clear that appellee committed the underlying offense (i.e., armed robbery) in Florida, that he was subsequently granted parole there, and that the State of Florida was now seeking his extradition from the State of Ohio because he had violated the terms of his Florida parole. Thus, the demand for extradition sufficiently comported with the requirements of R.C. 2963.06 such that the Governor of Ohio could surrender appellee to the executive authority in the State of Florida for committing an act in Ohio which resulted in a violation of his Florida parole, "even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom."
The Governor of Ohio obviously accepted the demand filed by the State of Florida as facially valid because he issued a governor's warrant for the arrest of appellee pending an extradition hearing. Again, it must be reiterated that a presumption of legality arose upon the issuance of the governor's warrant. Appellee bore the burden of rebutting the prima facie presumption that the proceedings conducted prior to the issuance of the warrant, including the demand for extradition submitted by the State of Florida, were in all respects regular and in conformity with the laws of the State of Ohio. See Carpenter, 69 Ohio St.2d at 314-315, citing In re Roma
(1948), 82 Ohio App. 414, 420. Appellee did not rebut beyond a reasonable doubt either this presumption or his lawful custody pending extradition.
Upon review, we decline to adopt appellee's hypertechnical reading of the demand for extradition or to declare such document defective on its face. See, e.g., Carpenter, 69 Ohio St.2d at 315
("[W]e refuse to adopt petitioner's hypertechnical reading of these documents and declare the instant extradition papers invalid"). The demand for extradition was not fatally defective.
Based on the foregoing analysis, the assignment of error is well-taken. Accordingly, the judgment of the trial court is reversed, and the matter is hereby remanded for further proceedings consistent with this opinion.
 _________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., CACIOPPO, J., Ret., Ninth Appellate District, sitting by assignment, concur.
[1] At the time of his conviction, appellee was known as "Willie Ira Womack, Jr." Thereafter, appellee had his name legally changed to "Wilfredo Ali."
[2] It is unclear why more than a year elapsed from the evidentiary hearing until the rendering of judgment.
[3] The state actually filed two different notices of appeal corresponding to the two trial court case numbers. This explains the two appeals subsumed herein.
[4] Under the circumstances, the proper method for appellee to challenge his pending extradition to Florida would have been for him to file a motion to quash the governor's warrant.