592 P.2d 512

Ruben BAZALDUA, Petitioner-Appellee,

v.

Michael HANRAHAN,
Respondent-Appellant.

No. 12143.

Supreme Court of New Mexico.

March 26, 1979.

Jeff Bingaman, Atty. Gen., Michael Kauffman, Asst. Atty. Gen., Santa Fe, Ira S. Robinson, Dist. Atty., Jon A. Feder, Asst. Dist. Atty., Albuquerque, for respondent-appellant.

John B. Bigelow, Chief Public Defender, Gregory Chase, Asst. Public Defender, Mark H. Shapiro, Asst. Appellate Defender, Albuquerque, Reginald J. Storment, Appellate Defender, Santa Fe, for petitioner-appellee.

OPINION

FEDERICI, Justice.

Appellee Bazaldua was indicted by a Texas Grand Jury for aggravated robbery. The Governor of Texas issued a requisition for the extradition of appellee from the State of New Mexico to the State of Texas to stand trial for the crime, alleged by the Texas Governor to have been committed in Texas. Appellee was arrested in Albuquerque, New Mexico, on a warrant issued in Dallas County, Texas, and was subsequently arrested pursuant to a warrant issued by the New Mexico Governor directing his rendition to the State of Texas.

Appellee filed a petition for writ of habeas corpus alleging that he was not a fugitive from justice because he was not present in the State of Texas at the time the alleged offense was committed.

The district court held a hearing on the writ. Five witnesses testified under oath to the effect that appellee could not have been in the State of Texas at the time the alleged offense was committed. The five witnesses were related to, or friends of, appellee. After hearing testimony from the witnesses, the trial court granted the writ and released appellee to the custody of

his brother. But, the court allowed the State fifteen days within which to produce Eduardo Sanchez, the victim of the alleged crime, to testify in court. The State did not produce Sanchez or any other evidence. The court, by final order and judgment, sustained the writ of habeas corpus and ordered appellee discharged from custody.

The State argues that it proved its prima facie case after it presented the extradition documents, including an affidavit from the victim of the crime. Further, the State argues that appellee has the burden of proving beyond a reasonable doubt that he was not in Texas and therefore not a fugitive at the time the alleged crime was committed. The documents produced from the demanding state made out a prima facie case and this was not overcome by evidence beyond a reasonable doubt.

On the subject of extradition, Article IV, § 2, cl. 2 of the United States Constitution provides:

> A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

Congress has implemented the constitutional provision. The relevant statute, 18 U.S.C. § 3182 reads:

> Whenever the executive authority of any State or Territory demands any person as a *fugitive from justice,* of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled *shall* cause him to be arrested and secured, and noti-

fy the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and *shall* cause the fugitive to be delivered to such agent when he shall appear. (Emphasis added.)

New Mexico has adopted the Uniform Criminal Extradition Act, §§ 31–4–1 through 31–4–30, N.M.S.A.1978 (formerly §§ 41–19–1 through 41–19–30, N.M.S.A. 1953). Section 31–4–2 of the New Mexico Act provides:

> Subject to the provisions of this act [31–4–1 to 31–4–30 N.M.S.A.1978], the provisions of the constitution of the United States controlling, and any and all Acts of Congress enacted in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has *fled from justice* and is found in this state. (Emphasis added.)

In *Michigan v. Doran,* —— U.S. ——, 99 S.Ct. 530, 58 L.Ed.2d 521, decided by the United States Supreme Court on December 18, 1978, the respondent had been arrested in Michigan and charged with a crime. Michigan had notified Arizona and Arizona charged respondent with theft. An Arizona justice of the peace issued an arrest warrant which recited that there was "probable cause" to believe that respondent had committed the crime. The Governor of Arizona issued a requisition for extradition accompanied by an arrest warrant, supporting affidavits and the original complaint. The Governor of Michigan issued an arrest warrant and ordered extradition. Upon arraignment on the Michigan warrant, respondent petitioned for a writ of habeas corpus alleging that the extradition warrant was invalid because it did not comply with the Michigan Uniform Criminal Extradition Act. After reviewing the constitutional provision, the Act of Congress and Michigan's Uniform Extradition Act, the Court, through Chief Justice Burger, set out the intent and purpose of the extradition clause of the Constitution:

The Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. *Biddinger v. Commissioner of Police,* 245 U.S. 128, 132–133, 38 S.Ct. 41, 42, 62 L.Ed. 193 (1917); *Appleyard v. Massachusetts,* 203 U.S. 222, 227, 27 S.Ct. 122, 123, 51 L.Ed. 161 (1906). The purpose of the Clause was to preclude any state from becoming a sanctuary for fugitives from the justice of another state and thus "balkanize" the administration of criminal justice among the several states.

The Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial.

. . . . .

Under Art. IV, § 2, the courts of the asylum state are bound to accept the demanding state's judicial determination since the proceedings of the demanding state are clothed with the traditional presumption of regularity. In short, when a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review the determination.

— U.S. at — —, 99 S.Ct. at 534–536.

The Court concluded:

We hold that once the governor of the asylum state has acted on a requisition for extradition based on the demanding state's judicial determination that probable cause existed, no further judicial inquiry may be had on that issue in the asylum state.

— — U.S. at — — —, 99 S.Ct. at 536.

The Court placed a limitation upon the power of a court in the asylum state to review the requisition for extradition:

A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. Cf. *Bassing v. Cady,* 208 U.S. 386, 392, 28 S.Ct. 392, 393, 52 L.Ed. 540 (1908). Once the governor has granted extradition, a court considering release on habe-

as corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable.

— U.S. at — —, 99 S.Ct. at 535.

■ A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. Thereafter, the burden shifts to the respondent (appellee here) to prove beyond a reasonable doubt in the asylum state that he is not a fugitive from the demanding state. *South Carolina v. Bailey,* 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933). In *South Carolina,* the Court said:

No question is raised concerning the form or adequacy of the writ issued by the Governor of North Carolina.

Prima facie *Bailey* was in lawful custody and upon him rested the burden of overcoming the presumption by proof. (Citation omitted.)

. . . . .

The demanding State asserted a right to the custody of the respondent under the Federal Constitution and statute. He claimed that these impliedly forbade his surrender since the evidence made it clear that he was beyond the limits of South Carolina at the time of the homicide and, therefore, was not a fugitive from the justice of that State.

These questions of federal right were properly submitted for consideration by the state court upon the return to the writ of habeas corpus. And it was the duty of that court to administer the law prescribed by the Constitution and statute of the United States . . . .

. . . . .

In *Munsey v. Clough,* 196 U.S. 364, 374, 25 S.Ct. 282, 285, 49 L.Ed. 515, through Mr. Justice Peckham, this Court said: "When it is conceded, or when it is so

conclusively proved, that no question can be made that the person was not within the demanding State when the crime is said to have been committed, and his arrest is sought on the ground only of a constructive presence at the time, in the demanding State, then the court will discharge the defendant. *Hyatt v. Corkran,* 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657 affirming the judgment of the New York Court of Appeals, 172 N.Y. 176, 64 N.E. 825. But the court will not discharge a defendant arrested under the governor's warrant where there is merely contradictory evidence on the subject of presence in or absence from the State, as *habeas corpus* is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of the accused." (Emphasis added.)

.     .     .     .     .

Considering the Constitution and statute and the declarations of this Court, we may not properly approve the discharge of the respondent unless it appears from the record that he succeeded in showing by clear and satisfactory evidence that he was outside the limits of South Carolina at the time of the homicide. Stated otherwise, he should not have been released unless it appeared beyond reasonable doubt that he was without the State of South Carolina when the alleged offense was committed and, consequently, could not be a fugitive from her justice.

289 U.S. at 417, 419–22, 53 S.Ct. at 669–671.

We adopt the rules announced by the Supreme Court of the United States in *Michigan v. Doran, supra,* and *South Carolina v. Bailey, supra.*

After the hearing on the writ and after the State failed to produce any further evidence showing that appellee was in the State of Texas at the time the alleged crime occurred, the trial court entered a final order which reads:

And the State of New Mexico  .   .   . having failed to produce any evidence in this matter by July 27, 1978, and the Court having found beyond a reasonable doubt that the Petitioner was not in the State of Texas at the time of the alleged offense, IT IS

ORDERED that the Writ of Habeas Corpus hearing be and is sustained, AND IT IS FURTHER

ORDERED that Ruben Bazaldua, the Petitioner is hereby and permanently discharged from custody in this matter.

Although the trial court's findings and conclusions favorable to appellee are entitled to great weight, appellee did not overcome the State's prima facie case by proof beyond a reasonable doubt. The burden upon appellee of overcoming the prima facie case is heavy. Conflicting evidence is not sufficient. The evidence adduced by appellee went not only to his contention that he was not in Texas, but also to the question of alibi. Habeas corpus is not the proper proceeding in which to try the latter question. *South Carolina v. Bailey, supra.*

The order and judgment of the trial court is reversed.

IT IS SO ORDERED.

SOSA, C. J., and EASLEY, J., concur.