The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Paul E. COYLE, Defendant-Appellant.

No. 81SA563.

Supreme Court of Colorado,
En Banc.

Nov. 22, 1982.

Rehearing Denied Dec. 6, 1982.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., J. Stephen Phillips, Laura E. Udis, Susan P. Mele, Asst. Attys. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Charles F. Kaiser, Diana L. DeGette, Deputy State Public Defenders, Denver, for defendant-appellant.

DUBOFSKY, Justice.

The defendant, Paul E. Coyle, appeals from his conviction in Denver District Court for violation of a child custody order, section 18–3–304, C.R.S.1973 (1978 Repl.Vol. 8).[1] Coyle urges reversal of his conviction on three grounds. First, he argues that Colorado should have been collaterally estopped from trying him on the violation of custody charges because New Mexico granted his petition for a writ of habeas corpus when Colorado sought to have him extradited on those charges. Second, Coyle seeks to collaterally attack the constitutionality of the Juvenile Court order placing custody of his children in the Denver Department of Social Services (DDSS).[2] Finally, Coyle claims that there was not sufficient evidence to support his conviction for violation of custody. Because none of Coyle's arguments are persuasive, we affirm the conviction.

On July 21, 1976, the DDSS filed a petition alleging that the twelve minor children of the defendant and his wife were dependent or neglected. At a court hearing the same day, defendant was served with the petition, advised of his rights, and had counsel appointed to represent him. The DDSS, which already had protective custody of one of the children, moved for protective custody of ten of the others. The court denied the motion without prejudice and ordered that all of the children be examined by a pediatrician. Two days later, at the request of the examining doctor, the court issued an emergency *ex parte* order under C.R.J.P. 13 placing eight of the children in the protective custody of the DDSS. The court held a hearing within 48 hours of the emergency order and ruled that the children should remain in protective custody. All twelve children were adjudicated dependent or neglected at the combined adjudicatory and dispositional hearing on January 3, 1977, with the defendant stipulating to the allegation of dependency or neglect.

---

1. Section 18–3–304 provides:

   "*Violation of custody.* (1) Any person, including a natural or foster parent, who, knowing that he has no privilege to do so or heedless in that regard, takes or entices any child under the age of eighteen years from the custody of his parents, guardian, or other lawful custodian commits a class 5 felony.

   (2) Any parent or other person who violates an order of any district or juvenile court of this state, granting the custody of a child under the age of eighteen years to any person, agency, or institution, with the intent to deprive the lawful custodian of the custody of a child under the age of eighteen years, commits a class 5 felony.

   (3) It shall be an affirmative defense either that the offender reasonably believed that his conduct was necessary to preserve the child from danger to his welfare, or that the child, being at the time more than fourteen years old, was taken away at his own instigation without enticement and without purpose to commit a criminal offense with or against the child."

2. The defendant's appeal was transferred to this court under sections 13–4–102(1)(b) and 13–4–110(1)(a), C.R.S.1973 because of the constitutional challenge to C.R.J.P. 13 and to portions of the Children's Code, 19–1–101 *et seq.* C.R.S.1973 (1978 Repl.Vol. 8) relevant to child custody orders.

In making its disposition, the juvenile court considered and adopted the recommendations of the DDSS and ordered its proposed treatment plan implemented. Over the six-month course of the dependency or neglect proceedings, the DDSS had presented evidence of malnutrition and psychological abuse of the children by both parents and of incest and sexual molestation of the girls by the defendant. The ten youngest children, eight of them girls, were placed in the continuing custody of the DDSS, which had already placed them in foster homes. The two other children remained in the custody of their parents pending placement in a residential treatment facility. The defendant did not appeal any portion of the adjudication or disposition.

After the children were adjudicated dependent or neglected, the defendant and his wife moved to California. They returned to Colorado on two occasions. In May, 1977, they arranged a clandestine meeting with their eldest daughter, who left her foster home and returned to California with them. In May, 1978, the defendant and his wife accosted two younger daughters walking from their foster home to school, enticed them into the car, and took them to California.

Colorado instituted criminal proceedings against the Coyles for three counts of violation of custody, one count for each daughter taken to California. In September, 1979, Colorado authorities tried unsuccessfully to extradite them from New Mexico. A New Mexico district court granted the defendant a writ of habeas corpus because the extradition documents did not state that the defendant was present in Colorado at the times he allegedly violated the custody order. Colorado then resubmitted an extradition warrant which was legally sufficient, but by then the Coyles had left New Mexico.

The defendant was later arrested in California and returned to Colorado to face the custody violation charges. The district court denied the defendant's motion to dismiss on the basis of collateral estoppel and the alleged unconstitutionality of the juvenile court order awarding custody to the DDSS. The court found the defendant not guilty of the count of violation of custody in 1977 and guilty of the two other counts. The defendant was given a suspended sentence and placed under the supervision of the probation department for 17 years.

## I.

The defendant first contends that his prior discharge on a writ of habeas corpus in the New Mexico extradition proceeding barred his subsequent prosecution in Colorado. He argues that the finding of the New Mexico court that he was not in Colorado at the times of the alleged crimes must be given collateral estoppel effect.

■ Had the decision of the New Mexico court been a final judgment in the defendant's favor on the merits of the issue, the defendant's argument would be compelling. Collateral estoppel requires that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970).[3] But the inquiry at the New Mexico habeas corpus proceeding, as with all such proceedings under the Uniform Criminal Extradition Act, did not go to the merits of any element of the crime charged. The scope of the hearing was limited to the issues of (1) the technical sufficiency of the extradition papers; (2) identification of the accused; (3) whether the accused is charged with a crime; and (4) whether the accused is a fugitive from justice. *Bazaldua v. Hanrahan,* 92 N.M. 596, 592 P.2d 512 (1979); *see also Michigan v. Doran,* 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978). The basis of New Mexico's discharge of the defendant on a writ of habeas corpus was a

**3.** *Ashe* held that collateral estoppel is embodied in the Fifth Amendment guarantee against dou-

ble jeopardy. 397 U.S. at 445, 90 S.Ct. at 1195.

technical insufficiency in the extradition documents. The Colorado authorities failed to allege that the defendant was in Colorado on the dates' of the crimes charged. Therefore, as the Colorado district court correctly found in ruling on the defendant's motion to dismiss, New Mexico properly granted a writ of habeas corpus.

■ The discharge in habeas corpus did not collaterally estop Colorado from subsequently submitting a second, legally sufficient set of extradition papers, which it did, resulting in the issuance of a second warrant for the defendant's arrest. *Collins v. Loisel,* 262 U.S. 426, 43 S.Ct. 618, 67 L.Ed. 1062 (1923); *Boyd v. VanCleave,* 180 Colo. 403,.505 P.2d 1305 (1973); *Harris v. Massey,* 241 Ga. 580, 247 S.E.2d 55 (1978); *In Re Russell,* 12 Cal.3d 229, 115 Cal.Rptr. 511, 524 P.2d 1295 (1974); *State ex rel. Yarbrough v. Snider,* 2 Or.App. 97, 465 P.2d 739 (1970). It follows that the grant of the writ for technical insufficiency of the documents did not estop Colorado from prosecuting the defendant on the merits of the violation of custody charges.

## II.

### A.

In his motion to dismiss the violation of custody charges, the defendant attempted to collaterally attack the constitutionality of the juvenile court order placing his children in the custody of the DDSS after they were adjudicated dependent and neglected. The district court held that our decision in *People v. Able,* Colo., 618 P.2d 1110 (1980) permitted the defendant to attempt to collaterally attack the custody order, but that the defendant lacked standing to do so because he had stipulated to the allegation of dependency or neglect. We conclude that the district court reached the correct result but that its reading of *Able* was too broad.

In *Able,* the defendant was charged with operating a motor vehicle while his driver's license was revoked because he was an habitual traffic offender. The defendant collaterally attacked the revocation order as based on an invalid conviction, and the dis-

trict court dismissed the charge. We held that collateral attack is appropriate in two instances: when the order is void because the tribunal issuing it lacked personal or subject matter jurisdiction, and when the order is based on "a conviction obtained in violation of [his] . . . constitutional rights." *Id.,* 618 P.2d at 1112 (*quoting People v. Heinz,* 197 Colo. 102, 105, 589 P.2d 931, 933 (1979)). Because neither condition applied, we reinstated the information against Able.

■ The test set out in *Able* applies when a criminal defendant challenges the constitutional validity of a criminal conviction which serves as the basis for a subsequent criminal prosecution such as habitual traffic offender, *e.g., People v. DeLeon,* 625 P.2d 1010 (Colo.1981), or habitual criminal, *e.g., People v. Quintana,* 634 P.2d 413 (Colo. 1981). Similarly, a conviction obtained in violation of a criminal defendant's constitutional right to counsel may not be used to enhance punishment under a state recidivist statute. *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

The rationale for permitting collateral attack on a criminal conviction obtained without full procedural safeguards is that "a conviction so obtained is not sufficiently reliable to support the severe sanction of deprivation of liberty." *People v. Roybal,* Colo. 618 P.2d 1121, 1126 (1980). Further, the mere fact of having incurred a criminal conviction can have strong and lasting ramifications on a person's reputation, employment opportunities, family life, and right to participate in the political process. Principles such as the presumption of innocence, the rule that criminal statutes are to be strictly construed in favor of the accused, and the requirement that the State prove every element of a crime beyond a reasonable doubt exist because, in our system of justice, every doubt is to be resolved in favor of the accused individual whose liberty is at stake. Thus, the convicted criminal defendant is assured not only of all of the avenues of direct appeal which the State provides as of right, but also of a means of post-conviction collateral review notwithstanding his failure to pursue a direct appeal. Crim.P. 35.

A different set of interests comes into play, however, when a child custody order subsequently forms part of the basis for a criminal defendant's guilt. In a civil proceeding between private parties or between a private party and the State, there is not the consequence of "the severe sanction of deprivation of liberty" in the form of incarceration which would support a rule that civil litigants should be allowed in a subsequent civil proceeding to collaterally attack the constitutionality of the judgment or order.[4] The strong interest in the finality of civil judgments is reflected in the well-settled rule that such a judgment may be attacked collaterally in a later civil proceeding only when the court entering it lacked personal or subject matter jurisdiction. *Estate of Bonfils v. Davis,* 190 Colo. 70, 543 P.2d 701 (1976); *McLeod v. Provident Mutual Life Insurance Co. of Philadelphia,* 186 Colo. 234, 526 P.2d 1318 (1974); *Davidson Chevrolet v. City and County of Denver,* 138 Colo. 171, 330 P.2d 1116 (1958).

The issue becomes more complicated, however, when a civil judgment or order is the subject of collateral attack in a subsequent criminal proceeding which involves use of the judgment as an element of the criminal offense. The criminal law principles—presumption of innocence, strict construction of criminal statutes in favor of the accused, and proof beyond a reasonable doubt—which protect an accused individual whose liberty is at stake are not required in civil actions. It is conceivable that errors of constitutional dimension may so taint a civil proceeding that the resulting judgment should not be permitted to serve as an element of a subsequent criminal conviction. However, we conclude that where the prior civil judgment is in a child custody proceeding, the interests protected by the finality of the child custody order outweigh those protected by allowing a defendant charged with violation of custody to collaterally attack the constitutionality of the underlying adjudication of dependency or neglect and child custody order.

The finality of civil judgments is especially important in family law cases, as we recognized in *People in the Interest of C.A.K.,* 652 P.2d 603 (1982). In *C.A.K.,* we applied the clear and convincing standard of proof only to future proceedings to terminate parental rights. The factor of stability and continuity in family relationships militated convincingly against retroactive application, when to do so would result in opening closed cases for new trials and subjecting children to further uncertainty and possible alterations in their living arrangements. The same concerns weigh heavily in the circumstances of this case. To permit collateral attack of custody orders would deny children, their natural parents, and their new custodians a degree of stability in the custody arrangement to which all of them are entitled. The opportunities for contesting the court-ordered custody arrangement which are provided by post-trial motions and appeals are sufficient protection for the rights of the natural parents. *See also Lehman v. Lycoming County Children's Services Agency,* —— U.S. ——, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982) (holding that 28 U.S.C. § 2254, the federal habeas corpus statute, does not confer federal court jurisdiction to entertain collateral attacks on the constitutionality of state parental rights termination proceedings, based in part on the fact that "the State's interest in finality is unusually strong in child-custody disputes.") *Id.* at 3238.

Our conclusion that the interests protected by the finality of the child custody order outweigh those protected by allowing collateral attack in a criminal proceeding is supported by two reasons. First, allowing a defendant to collaterally attack a prior civil

---

**4.** There does exist the possibility that violation of a court's order or injunction may be punished by imprisonment pursuant to the court's contempt powers. C.R.C.P. 107. Unlike a criminal judgment, which carries a sentence prescribed by statute, a civil order or injunction carries no penalty of incarceration until and unless it is violated. Thus, the United States Supreme Court has held that like a civil judgment, an injunction may not be collaterally attacked on grounds other than the court's jurisdiction over the subject matter and the parties. *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).

judgment where at least one other party has a stake in the finality of the outcome subjects persons other than the defendant to uncertainty. As we noted above, the finality of civil judgments is especially important when the other interests affected are those of children, their natural parents, and their new custodians in a child custody order. When a defendant is allowed to collaterally attack the constitutionality of a prior criminal conviction, the only individual with a personal stake in the finality of that prior decision is the defendant. Child custody orders affect numerous parties who may not have notice or an opportunity to appear at the subsequent criminal prosecution in which the defendant parent asserts the unconstitutionality of the order. Second, it is fundamental to our legal system that "all orders and judgments of courts must be complied with promptly. If a person to whom a judge directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Maness v. Meyers,* 419 U.S. 449, 458, 95 S.Ct. 584, 590, 42 L.Ed.2d 574 (1975).

■ The defendant stipulated to an allegation that his children were dependent or neglected and did not thereafter contest or appeal any portion of the adjudication or disposition.[5] Having failed to exhaust his right to appeal, the defendant's only remedy was a collateral attack upon the juvenile

court's jurisdiction over the person or the subject matter. The district court correctly concluded that the juvenile court had personal and subject matter jurisdiction in the proceeding in dependency or neglect.[6]

### B.

■ Although our holding that collateral attack on a child custody order is not appropriate in a criminal prosecution makes it unnecessary to consider the defendant's constitutional arguments, we do so because our holding forecloses a form of collateral attack ostensibly left open by *People v. Able.*[7] The first of the defendant's three constitutional arguments is that he was denied due process by the *ex parte* emergency order placing his children in protective custody. Under the limited circumstances set out in C.R.J.P. 13, *ex parte* orders placing a child in protective custody when the child's welfare or safety is endangered are permissible. The requirement that a hearing be held within 48 hours, with notice to the parent, adequately protects the parent's due process rights *vis-a-vis* the State's strong interest in ensuring the welfare of children. In issuing the *ex parte* emergency order, the juvenile court acted upon the recommendation of a doctor who examined the defendant's children and advised their immediate removal from the home. The juvenile court adhered to the requirements of C.R.J.P. 13 and did not violate the defendant's right to due process.

■ The defendant's second contention, that the juvenile court used an impermissibly low burden of proof in adjudicating his

---

5. Essential to our ruling that a custody order may not be collaterally attacked on bases other than the court's lack of personal or subject matter jurisdiction is the availability of procedures to appeal the order or judgment. *U.S. v. Stine,* 646 F.2d 839 (3rd Cir.1981); *see also Maness v. Meyers,* 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975).

6. The defendant argued below that the juvenile court was without jurisdiction to enter the custody order which he now alleges is unconstitutional on the theory that no court has jurisdiction to enter an order which is unlawful. Even if the custody order were constitutionally infirm, the theory which the defendant advances

has been rejected. *Walker v. City of Birmingham, supra* note 4.

7. Our holding is consistent with that of *Able, supra,* which held that collateral attack on an administrative order revoking the defendant's driver's license is justified when one of the *convictions* which is a predicate for revocation was unconstitutionally obtained. Because the defendant in *Able* raised no issue of constitutional dimension with respect to the predicate convictions, his collateral attack failed, and we authorized his prosecution for driving while his driver's license was revoked because he was an habitual traffic offender.

children dependent or neglected, is answered by our decisions in *People in the Interest of O.E.P.*, 654 P.2d 312 (Colo.1982) and *People in the Interest of A.M.D.*, 648 P.2d 625 (Colo.1982). In *A.M.D.*, we held that the clear and convincing evidence standard required in hearings on the termination of parental rights does not apply in dependency or neglect proceedings. The preponderance of the evidence standard of proof—the standard under which the defendant's children were adjudicated dependent or neglected—is constitutional in light of the remedial purpose of a proceeding in dependency or neglect.[8]

█ Finally, the defendant argues that absent a specific finding that it was in the children's best interests to be placed outside the home following an adjudication of dependency or neglect, the due process clause of the United States Constitution requires the juvenile court to use a less drastic alternative than placement of the children in the custody of the DDSS under section 19–3–111, C.R.S. 1973. At the time of the hearing on the dependency or neglect of the defendant's children, section 19–3–111(1) provided:

> *Neglected or dependent child—disposition.* (1) When a child has been adjudicated to be neglected or dependent, the court shall enter a decree of disposition. When the decree does not terminate parental rights, it shall include one or more of the following provisions which the court finds appropriate:
>
> (a) The court may place the child in the legal custody of one or both parents or the guardian, with or without protective supervision, under such conditions as the court may impose, as provided in section 19–3–110.

> (b) The court may place the child in the legal custody of a relative or other suitable person, with or without protective supervision, under such conditions as the court may impose, as provided in section 19–3–110.
>
> (c) The court may place legal custody in the county department of social services or a child placement agency for placement in a family care home, or other child care facility.
>
> (d) The court may order that the child be examined or treated by a physician, surgeon, psychiatrist, or psychologist or that he receive other special care and may place the child in a hospital or other suitable facility for such purposes.

Section 19–3–111(1) was amended in 1980 to add the following:

> *Neglected or dependent child—disposition.* (1.1) Before a disposition other than that provided in paragraph (a) of subsection (1) of this section is made, it shall be made to appear by a preponderance of the evidence that a separation of the child from the parents or guardian is in the best interests of the child.

In essence, the defendant is arguing that the finding which section 19–3–111(1.1) now explicitly requires was constitutionally required by the former version of section 19–3–111. We do not agree. The defendant's right to due process was not violated by the failure of the juvenile court to read into section 19–3–111 a requirement of a specific finding that placement outside the home was in the best interests of the children. Section 19–1–102, C.R.S.1973, the legislative declaration of intent for the Children's Code, charged the juvenile court with the responsibility of acting in the children's best interests and of removing the

---

8. The juvenile court's order terminating the defendant's parental rights on July 12, 1978 was also entered using the preponderance of the evidence standard. The defendant's collateral attack does not directly implicate the termination order, as he was convicted of violating the custody order in the dependency or neglect adjudication, but the defendant, in his brief, raises the issue of the appropriate standard of proof for termination of parental rights. This claim is disposed of by our decision in *People in the Interest of C.A.K., supra,* in which we held that the clear and convincing standard of proof is constitutionally required in parental termination proceedings, but that the new rule would apply only to termination hearings commenced after March 24, 1982, the date of the United States Supreme Court's decision in *Santosky v. Kramer,* —— U.S. ——, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

children from the custody of their parents only when their welfare demanded it. The evidence of incest and abuse supported the juvenile court's original emergency order placing the children in protective custody of the DDSS and its order at the disposition stage continuing that arrangement. Although placement outside the home constituted an interference with the defendant's liberty interest in raising his children, "the adjudicatory phase of a dependency proceeding does not affect the natural parent's liberty interest in the parent-child relationship to the same constitutionally significant degree as does a termination proceeding", *People in the Interest of O.E.P., supra,* 654 P.2d at 316, and we conclude that the juvenile court's disposition did not deprive the defendant of his liberty interest without due process of law.

### III.

Our review of the record convinces us that the evidence was sufficient to support the defendant's conviction on two counts of violation of custody.

Judgment affirmed.