UNITED BANK OF SKYLINE,
NATIONAL ASSOCIATION,
Respondent,

v.

David FALES, Defendant,

Arthur J. Petrie, Petitioner, Appellant.

No. C8–86–549.

Supreme Court of Minnesota.

May 8, 1987.

Robert J. Sheran, Teresa B. Bonner, Minneapolis, Russell E. Vigil, Denver, Colo., for appellant.

R. Michael Regan, Mankato, Wendell B. Porterfield, Denver, Colo., for respondent.

YETKA, Justice.

This appeal comes from a court of appeals' decision affirming a lower court's denial of appellant's motion for relief from a summary judgment entered in Denver, Colorado, and docketed in Blue Earth County, Minnesota. We affirm.

This litigation began when respondent United Bank of Skyline filed a civil suit in Colorado to collect on loans made to appellant Arthur J. Petrie, a resident of Minnesota, and his partner, David Fales. Petrie and Fales had used the money to develop real estate located in Colorado. A chronology of the ensuing procedural events is adapted from the findings of the Blue Earth County District Court, which heard this matter.

| | |
|---|---|
| October 19, 1983 | — Arthur J. Petrie is served with a summons and complaint in the main action venued in Denver County, Colorado. |
| December 2, 1983 | — Petrie enters an appearance by his attorney, Russell E. Vigil. |
| December 13, 1983 | — Clerk's default entered against Petrie for his failure to plead or otherwise defend. |
| February 8, 1984 | — Court judgment entered against Petrie with notice to Vigil and successor attorney, the Powers firm. |
| February 10, 1984 | — Vigil withdraws as counsel for Petrie and Powers firm appears for Petrie with permission of the court. |
| February 10, 1984 | — Petrie moves to set aside clerk's default judgment and court judgment and extend time to answer. |
| March 22, 1984 | — Court orders clerk's default and court judgment set aside, granting Petrie time to answer. |
| April 9, 1984 | — Petrie files answer. |

May 8, 1984 — Order setting trial for July 10 and 11, 1985.

January 17, 1985 — Petrie moves to substitute Vigil for Powers as his attorney.

January 25, 1985 — Court order authorizes substitution of attorneys.

July 8, 1985 — Vigil files *ex parte* motion to continue trial because of his need for medical treatment.

July 8, 1985 — Court enters *ex parte* order continuing trial and ordering Vigil to reset case for trial when counsel ready.

July 26, 1985 — United Bank moves for summary judgment on attached affidavits, documents and briefs and serves same on Vigil by mail on July 26, 1985, addressed to his last known address as set out in the pleadings and other documents in the file.

July 31, 1985 — Motion and accompanying documents mailed on July 26, 1985, returned to United Bank by Post Office Department marked "Forwarding Order Expired." United Bank checks Supreme Court Registrar of Attorneys, discovers new address for Vigil and makes service by mail on July 31, 1985.

November 15, 1985 — Court order sets hearing on United Bank's motion for summary judgment for December 10, 1985, serving notice on Vigil by mail to his old address.

December 10, 1985 — Hearing on summary judgment held; neither Petrie nor his counsel appears. Petrie's counsel claimed later that he did not receive notice of the hearing, that he had been misled by a telephone inquiry to the clerk of court as to whether or not the matter was to be submitted on affidavits or by hearing, and that he had been advised that it would be by hearing. He claims he did not file affidavits at that time because he expected to file them at the time of the hearing. The court granted the motion and ordered judgment entered.

December 10, 1985 — United Bank serves order, judgment and decree on Vigil by mailing the same to both his new and old addresses.

December 11, 1985 — Judgment entered.

December 15, 1985 — Petrie moves for vacation of summary judgment and hearing on motion.

December 27, 1985 — Notice of hearing date of January 22, 1986, served by Petrie on United Bank.

January 23, 1986 — Court enters order denying motion for relief from judgment.

February 7, 1986 — United Bank registers Colorado judgment in Blue Earth County, Fifth Judicial District, and the same is docketed against Petrie in the amount of $75,056.

March 10, 1986 — Petrie serves notice and motion for relief from judgment entered in Blue Earth County. Hearing on Petrie's motion held in Windom, Minnesota, on March 20, 1986.

Petrie did not appeal the judgment entered in Colorado or seek review of the Colorado court's order denying his motion for relief from the judgment. The District Court of Blue Earth County found that Petrie had a reasonable excuse for not appearing at the summary judgment hearing and might have a substantial defense on the merits of the underlying action. However, the court denied Petrie's motion for relief from the judgment, stating that Petrie's remedy was to appeal the Colorado trial court's refusal to vacate the judgment in Colorado. The court of appeals affirmed. *United Bank of Skyline v. Fales*, 395 N.W.2d 131 (Minn.App.1986).

The sole question of this case is whether Minnesota should enforce the judgment entered in Colorado against Petrie. In connection with its judgment, the Colorado trial court entered two distinct decisions: one granting summary judgment against Petrie for the amount of the debt, the second denying Petrie's motion to vacate the judgment because of his attorney's failure to receive notice of the summary judgment hearing. Petrie would have us independently determine whether the summary judgment was proper under the circumstances. However, we find the more salient issue to be what weight this court must give to the Colorado court's decision not to vacate its own judgment.

Enforcement of foreign decisions in Minnesota's courts is guided by article IV, section 1 of the United States Constitution, which states: "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state." In addressing the issue of collateral attacks on foreign judgments for alleged jurisdictional defects, the United States Supreme Court held that "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions [of jurisdiction] have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke*, 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963). In other words, a court need not accept the judgment of a foreign court if that court lacked the jurisdiction to render the judgment. However, if that same foreign court already fully and fairly addressed the contention that it lacked jurisdiction, then its decision on that point must be given effect. *See also* Restatement (Second) of Judgments § 10(2) (1982) ("A determination of an objection to notice or territorial jurisdiction precludes the party

who asserted it from litigating either contention in subsequent litigation").

In previous cases, this court's analysis of attacks on foreign judgments has followed the principles enunciated in *Durfee*. In *Imperial Skyliner Auto-Wash Sales Corp. v. Whinnery*, 301 Minn. 91, 221 N.W.2d 716 (1974), a New York judgment was asserted against a defendant resident of Minnesota. The defendant had previously attacked the jurisdiction of the New York court by filing a motion to dismiss the complaint and attaching an affidavit with facts demonstrating New York's lack of jurisdiction. The New York court subsequently held a hearing on this motion and denied defendant's motion to dismiss. Defendant chose not to appear at this hearing nor was he represented by counsel. The defendant did not take any further appeals from the New York court.

This court found no need to consider whether the New York court was correct in finding it had jurisdiction. Instead, it focused on "whether the question of jurisdiction was *fully and fairly litigated* in the New York proceedings." *Id.* 221 N.W.2d at 717 (emphasis in original). This court found that there had been full and fair litigation of the jurisdictional issue given that defendant's motion to dismiss constituted an appearance and defendant had full opportunity to appear at the hearing.

■ In this case, Petrie does not contend that Colorado lacked personal jurisdiction to render judgment against him, but, instead, that he was denied a reasonable opportunity to be represented at the summary judgment hearing—a possible violation of general due process rights. However, the difference in the type of collateral attack does not change the analysis. This court will credit decisions of the Colorado courts that have been fully and fairly litigated in that state.

The record of the present case demonstrates that Petrie had a full opportunity to litigate the issues of due process. The Colorado court reached its decision not to vacate summary judgment after argument by both parties, addressed, at least in part, to the issue of the lack of notice of the summary judgment hearing. As required

by the constitution, this court accepts the Colorado court's decision.

■ Petrie has cited Colorado precedent suggesting that the Colorado court's failure to state the reasons for its denial of the motion to vacate the summary judgment was in error. It is clear, however, that Colorado law does not allow a collateral attack on a judgment alleged to suffer such a procedural flaw. *See People v. Coyle*, 654 P.2d 815, 819 (Colo.1982). If Petrie disagreed with the trial court's ruling, his remedy was to appeal the decision in Colorado. Any attempts by the bank to enforce the judgment in Minnesota would have been stayed pending such an appeal. Minn.Stat. § 548.29 (1986).

Before this court, Petrie's counsel stated that his client sought only an opportunity to present his case. The record demonstrates that Petrie's delays have allowed him nearly 3 years to prepare and present his case in Colorado and that his own counsel's neglect and inattention were largely responsible for the absence of argument on Petrie's behalf at the summary judgment hearing. In any event, as previously discussed, Petrie has already had the opportunity to litigate the issue of unfair treatment in Colorado.

The trial court and the court of appeals are affirmed in all respects.